GEORGE D. PIERSON, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Nichols, Cooper & Hickson and R. G. Lamb for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger, Robert Ball and Anthony C. Tomczak for Respondents.

VALLÉE, J.—Review of proceedings of the Industrial Accident Commission.  November 14, 1947, petitioner George D. Pierson, while employed as a mine foreman, sustained injury arising out of and in the course of his employment resulting in total disability.

The commission found that at the time of the injury Pierson was employed by Livingston Greenwood who was then insured by Colonial Insurance Company.  An award was made accordingly.  Thereafter, on petition of Colonial, a rehearing was granted.  After further hearings the commission found that

at the time of the injury Pierson was employed by Baldoro Mines, Inc., a corporation, which was uninsured, and not by Livingston Greenwood. An award was made in favor of Pierson against Baldoro Mines, Inc. The proceeding was dismissed as to Livingston Greenwood and Colonial. Petitioner—applicant before the commission—seeks to annul the award.

December 27, 1946, Livingston Greenwood and Edward F. Cavanaugh, as lessees, leased some mining property in the county of Los Angeles, known as ''Baldoro Mines.'' Although Cavanaugh was named as lessee, the leasehold interest was in fact the property of Greenwood. Greenwood acquired the lease with the intention of individually doing all preparatory work, including road building; and when actual mining operations began he intended to form a corporation in the State of Washington, and after the corporation qualified in California, to transfer the leasehold interest to the corporation.

February 17, 1947, a policy of workmen's compensation insurance was issued by Colonial insuring Greenwood. Premiums on the policy were calculated on a payroll audit submitted by Greenwood, which included the payroll of Pierson. The policy expired February 17, 1948. During its life Colonial paid two accident claims other than that of Pierson.

July 3, 1947, Baldoro Mines, Inc., was incorporated in the State of Washington. July 25, 1947, Greenwood and Cavanaugh assigned their interest in the lease to Baldoro Mines, Inc. The assignment was never recorded in California. The board of directors of Baldoro Mines, Inc., never held a formal meeting. The corporation, as such, never functioned at any time. It did not transact or carry on any business in California prior to May 21, 1948, when it qualified to do business in this state. It appears from the record that the corporation is a mere shell, without any assets of value, and that the award against it is worthless.

From January 1 until about November 1, 1947, Cavanaugh was superintendent of the preparatory work then being done. He was paid by Greenwood personally. As many as eight men worked under Cavanaugh. They were all paid by Greenwood personally. October 14 or 15, 1947, Greenwood employed Pierson as superintendent. The road work had not been completed and the mine was not in production at the time Pierson was employed. Pierson purchased and rented equipment in Montana, obtained a crew there and brought the equipment and crew to the mine. He charged part of the equipment to Green-

wood and paid for part of it himself. He was later reimbursed by Greenwood, personally, for the equipment and the expense of bringing the crew to the mine.

At the hearing Greenwood, when asked if anyone was appearing for the corporation, stated: "I am Baldoro Mines; I am doing business as Baldoro Mines" and "I admit that the man was injured when he was in my employ." Greenwood testified: "I pay all the bills; every check has been made by Livingston Greenwood. Some $48,892.73 has been spent, every check signed by myself . . . Every check that has ever been paid has been signed by me personally and not Baldoro Mines, or any other organization. Q. You have never signed any checks for the Baldoro Mines in connection with this property, this Camp Baldy property, as president or any other officer of the——A. No, Ma'am, never have. Q. These payroll checks that Mr. Pierson testified to were the checks that you sent to Pierson to his order to have cashed and then pay the men? A. Yes. Q. And those were all signed by you personally? A. All signed by me personally. . . . After Mr. Pierson came, he would send me the bill and I would send him the total amount including the check to Mr. George D. Pierson, and then he would cash the check and pay the men's wages." He also testified that after Pierson was employed he (Greenwood) was Cavanaugh's employer, "there wasn't anybody else." He stated: "I am Baldoro Mines as far as that is concerned and I cannot enter in the State of California to do business other than Livingston Greenwood." When asked if he wished to cross-examine Pierson, he said: "I have no questions to ask my employee. I hired him and I paid him and that's all there is to it as far as I am concerned."

All wages and all other expense in connection with the work done at the mine were paid by Greenwood from his personal checking account at Seattle. The corporation did not at any time have a checking account except at its inception in order to qualify under Washington law. No checks were ever written or signed by Greenwod as president of Baldoro Mines, Inc. No wages or other expense of the mine were ever paid with funds of Baldoro Mines, Inc. It never had a bank account in California. Greenwood personally paid all United States withholding taxes and state unemployment insurance upon the men employed at the mine with the exception of Pierson and Cavanaugh. Pierson took care of his own payroll deductions. There is no evidence that Greenwood was reimbursed by the corporation for the moneys expended by him. A fair inference

from the evidence is that he was not reimbursed. The mine was never brought into production. The work done was all preparatory.

Petitioner in his application for adjustment of claim alleged that his employer was "Livingstone Greenwood, Baldoro Mines, Inc." One of the issues before the commission was whether petitioner was employed by Greenwood and Baldoro Mines, Inc., jointly. The commission did not find on or determine this issue. It is the duty of the commission after final hearing to make findings "upon all facts involved in the controversy." (Lab. Code, § 5800.) The findings of the commission should conform to the general rules applicable to findings in trials which are conducted in the superior court. (*Gouanillou* v. *Industrial Acc. Com.*, 184 Cal. 418, 420 [193 P. 937]; *Dawson* v. *Industrial Acc. Com.*, 54 Cal. App.2d 594, 600 [129 P.2d 479].) The commission should make specific findings on all material issues presented in a claim for compensation. (*California Shipbuilding Corp.* v. *Industrial Acc. Com.*, 85 Cal.App.2d 435, 436 [193 P.2d 61]; Anno. 146 A.L.R. 123.) As said in *Simmons Co.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 664, 674 [161 P.2d 702], "It is 'essential that findings be such that the truth or falsity of each material allegation in issue can be demonstrated from the findings.' " An award cannot stand where there is a failure to find on a material issue. (*General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 191 [237 P. 33]; *California C. I. Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 P. 257]; *Moore Shipbuilding Co.* v. *Industrial Acc. Com.*, 70 Cal.App. 495 [233 P. 392].)

Petitioner was employed by Greenwood personally. The evidence is without conflict that from the time of his employment to the time of his injury the right to control and direct Pierson's work was possessed by Greenwood personally. The right to control and direct Pierson's work, possessed by Greenwood personally, gave rise to an employment relationship between them. *Industrial Ind. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130 [156 P.2d 926], involved a question of a dual employment relationship. The court in that case, speaking through Chief Justice Gibson, said, page 135: "The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248 [144 P.2d 16]; *Guarantee Ins. Co.* v. *Industrial Acc. Com., supra*

[22 Cal.2d 516 (139 P.2d 905)] ; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 P. 820].) ''

As we have said, petitioner was employed by Greenwood personally. That employment was never terminated. Petitioner was paid by Greenwood personally, never by the corporation. That fact is strong evidence of continued employment by Greenwood. The fact that there is evidence from which an inference may be drawn that Pierson was also employed by the corporation is not inconsistent with the fact that the original employment by Greenwood was never terminated and that he was in the employ of Greenwood at the time of the injury on November 14, 1947. The evidence was such as to require a finding on the issue of joint employment.

In view of the failure to find on the issue of joint employment, the award is annulled and the cause is remanded to the commission for further proceedings upon the entire issue of employment.

Shinn, P. J., and Wood, J., concurred.