128 Cal.App.2d 797 (1954)
CALIFORNIA COMPENSATION INSURANCE COMPANY (a Corporation), Petitioner,
v.
INDUSTRIAL ACCIDENT COMMISSION and BADGE MOORE, Respondents.
Civ. No. 20416. 
California Court of Appeals. Second Dist., Div. Two. 
Nov. 17, 1954.
 Kearney, Scott & Clopton for Petitioner.
 Everett A. Corten and Gordon W. Winbigler for Respondents.
 FOX, J.
 Petitioner seeks a review and annulment of an award by respondent commission of maximum temporary partial disability benefits.
 On July 2, 1953, Badge Moore, while in the course of his employment as a brick tender, sustained an injury to his back, resulting in temporary total disability. At a hearing on February 16, 1954, respondent commission found that the period of temporary total disability ran from July 3, 1953, to and including October 16, 1953, and entered its award in Moore's favor for the sum of $35 per week for that period. No dispute exists as to the validity of this phase of the matter.
 Evidence was taken at the same hearing relative to Moore's condition following the cessation of his total disability. Moore testified that he had been released to light work by his physician, Dr. Ferguson, on October 15, 1953. A report prepared by Dr. Ferguson under that date read in part: "Badge Moore is now ready to do light work. He should not perform any job that requires lifting more than 10 or 15 pounds. I am certain that six weeks from now he will be able to do regular full time work." Another report from Dr. Ferguson, dated February 9, 1954, was received subsequent to the hearing. The following language appears therein: "He [Moore] is partially disabled and I believe that he will not be able to do heavy physical work for at least another three months. I also believe that he should obtain some active physical therapy treatment for the next two months, on a three times weekly basis. At the present time he is capable only of sitting jobs or jobs requiring very light lifting."
 Moore testified that even before Dr. Ferguson notified him *803 that he was ready for light work, he had begun to look for employment of this nature, and in particular, for janitorial work. This activity took the form of contacts with several prospective employers and scanning of newspaper ads for offers of work. In addition, within two or three days after Dr. Ferguson informed him of his readiness for light work, Moore applied to the Department of Employment for janitorial work. Simultaneously therewith, he executed a sworn certification to the department of employment that he was ready, willing and physically able to perform the work for which he was registered. Thereafter, he obtained unemployment insurance benefits in the sum of $25 per week, the last payment having been received about one month prior to the hearing. His only employment since the date of the accident consisted of a one week, part-time job as a painter, for which he earned $15.
 Moore acknowledged the receipt of a letter from petitioner dated October 27, 1953, which read in part: "Dr. Ferguson has advised us that you are now ready to do light work. If you have not returned to work may we suggest you contact your employer to determine whether or not there is any work available for you." Moore testified he had made no inquiry of his former employer because the work of a brick tender, which entails pitching, picking up and carrying bricks, was not light work and, to the best of his knowledge, his old employer had no light work available to him. Petitioner's counsel thereupon informed Moore, for the record, that the Lesher Company, his employer, had work of a nature which he could perform and would make such work available to him. Moore stated he would apply for such work on the day following the hearing. On March 11, 1954, the referee denied a request by petitioner for an additional hearing on the ground that Moore had failed to report to Lesher for work.
 On March 17, 1954, respondent commission issued a Findings and Award, the pertinent part of which reads as follows: "3. Said injury further caused temporary partial disability beginning October 17, 1953, to and including February 16, 1954, and thereafter, entitling the applicant to compensation on a wage loss basis ... [H]e is and shall be entitled to compensation consisting of 65% of the difference between $53.85 and the amount earned in said week or weeks. ..."
 On March 25, 1954, petitioner filed with the commission a "Notice of Cessation of Payments of Compensation and Request for Termination of Liability," advising that it had discontinued compensation payments under the last order of the *804 commission on the ground that Moore "has been offered light work which he is physically able to perform and has voluntarily rejected said offer." A supplemental hearing to determine the validity of this petition was set.
 On April 5, 1954, petitioner filed a petition for reconsideration of the findings and award, incorporating therein substantially the same contentions on which it has based its petition for the writ of review herein. Petitioner seeks a review of the commissioner's order of May 5, 1954, denying its petition for reconsideration.
 Petitioner contends that it was improper to enter a maximum award of temporary partial disability indemnity in favor of Moore for the same period during which he received unemployment insurance benefits. The commission replies that in determining Moore's eligibility for temporary partial disability benefits under the Workmen's Compensation Act it is wholly immaterial that during the period in question he has qualified for and received unemployment compensation insurance payments. [fn. 1] It points out in substance that it has exclusive jurisdiction to determine the extent of a disability produced by an industrial injury; that it is free to exercise this jurisdiction independent of any decision made by the agency charged with the administration of the Unemployment Insurance Act; and that no provision of the Labor Code either expressly or impliedly precludes an employee from receiving workmen's compensation benefits despite the fact that he has accepted unemployment insurance benefits for a part of the period covered by the workmen's compensation award.
 The precise issue here posed appears to have received little judicial scrutiny. The factors crucial to its determination must be sought not only in the limited confines of statutory language, but also in the broader areas of principle and policy, and by an analytic examination of the history, background and legislative purpose underlying the enactment of social insurance legislation.
 [1] It is a matter of common knowledge that the pattern of wage- loss legislation in this state, as indeed throughout the country, did not evolve full-blown in accordance with a master blueprint but emerged piecemeal in response to society's awakening acceptance of the need for an enlightened *805 system of employee protection. The earliest workmen's compensation legislation in California was the Roseberry Act of 1911 (Stats. 1911, ch. 399, p. 796), which was supplanted two years later by the Boynton Act (Stats. 1913, ch. 176, p. 279). The current law in its original form was enacted in 1917 (Stats. 1917, ch. 586, p. 831). [2] The theory underlying such legislation is, succinctly stated, that industry should bear, in large measure, the burden of industrial accidents. (Western Indem. Co. v. Pillsbury, 170 Cal. 686, 694 [151 P. 398]; 27 Cal.Jur. 256.) This is accomplished by providing that a workman shall be compensated in part for the wage loss he sustains as the result of unemployment caused by sickness or injury of industrial origin. (See Lab. Code, 3201, 3202, 3208.)
 The general economic conditions prevailing in the 1930's, characterized by the spectacle of widespread unemployment, promoted the enactment of the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d.) [fn. 2] [3] Its primary object was to furnish benefits to eligible workers deprived of wages due to unemployment, and thus "cushion the impact of such impersonal industrial blights as seasonal, cyclical and technological idleness." (Chrysler Corp. v. California Emp. etc., Com., 116 Cal.App.2d 8, 16 [253 P.2d 68].) The law provides that an unemployed individual "is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that: ... (c) He was able to work and available for work for that week and had made such effort to seek work on his own behalf as may be required. ..." (Unempl. Ins. Code, 1253, subd. (c).)
 [4] Rounding out and complementing the statutory system of social insurance are the provisions of the Unemployment Compensation Disability Act (Stats. 1946, ch. 81, 150, 200 et seq., p. 101; 3 Deering's Gen. Laws, 1949 Pocket Supp., Act 8780d, 150 et seq.) [fn. 3] This legislation is designed to provide benefits for loss of wages by an employee while disabled under conditions not entitling him to the protection of the Workmen's Compensation Act. (Garcia v. Industrial Acc. Com., 41 Cal.2d 689, 692 [263 P.2d 8].) [5] Under this *806 act, an employee is not entitled to unemployment compensation disability benefits in addition to workmen's compensation or unemployment insurance benefits for the same period of unemployment. (Unempl. Ins. Code, 2628, 2629; 3 Deering's Gen. Laws, Act 8780d, 150, 207.)
 [6] It is axiomatic that in analyzing statutes for the purpose of finding and effectuating the legislative intent, "regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments." (County of Los Angeles v. Frisbie, 19 Cal.2d 634, 639 [122 P.2d 526].) [7] The statutes here under examination are part of a comprehensive, integrated program of social insurance which, operating in their respective spheres, are calculated to alleviate the burden of a loss of wages by a protected employee during a particular period of time. The contingencies foreseen are loss of wages through (1) involuntary unemployment; (2) industrially caused disability; and (3) disability of a nonoccupational nature. The significant aspect of this legislation concerns the fact that wages have been lost; the cause of such wage loss is the touchstone which determines which category of remedial legislation is germane. The Workmen's Compensation Act, which mitigates the hardships experienced where a worker is injured in the course of his employment, the Unemployment Insurance Act, which provides benefits to one unemployed because of lack of work, and the unemployment compensation disability insurance program, which protects the worker against nonoccupationad disability, though distinct, are all component elements of a general, coordinated plan of social insurance developed by the Legislature. (See Bryant v. Industrial Acc. Com., 37 Cal.2d 215, 218 [231 P.2d 32].) [8] Though enacted at different times and thus lacking the more perfect meshing of a uniform act, the tenor of the statutes and the recent cases construing them show that they are interrelated by the common principle implicit therein of permitting only a single recovery of benefits by an employee in a case involving temporary partial disability. (See Bryant v. Industrial Acc. Com., supra; Garcia v. Industrial Acc. Com., supra.)
 The problem before us in the instant case points up the need for a harmonious construction of such statutes in order to obviate the payment of cumulative benefits to an employee and to avoid the imposition of a double burden upon the employer. [9] Having suffered a particular weekly wage loss, *807 the employee is entitled to benefits under any of the remedial programs for which he qualifies which will afford him the maximum payments. [10] We fully recognize that an unemployed person, partially disabled by an industrial injury, may still be able to compete in the labor market, and thus may qualify for unemployment insurance benefits as one available for work. Although he may be covered by workmen's compensation, it may be preferable for him, if he is without funds, to apply for unemployment insurance, which he may obtain expeditiously, while his compensation claim is pending. But the subsequent compensation award, when made, as here, for temporary partial disability, is designed also to compensate the employee for the very same loss of wages for which he has drawn unemployment insurance benefits. Under such circumstances, to permit an award of benefits under the workmen's compensation act for the same period during which unemployment insurance benefits have been received (and solely for the same loss of wages), without an adjustment in the award reflecting the amount of such benefits, would be incompatible with the principles underlying the structure of these statutes. Thus, while the receipt of unemployment insurance benefits does not disqualify one otherwise found eligible by the commission for an award for temporary partial disability, the amount of the award should be reduced by the sum of such unemployment benefits. Otherwise, the result may often be the anomalous situation of public agencies providing the employee as much income, and on occasions more, during a period of idleness than he could earn if he were fully employed, so that it becomes to his advantage to remain away from work. (See Industrial etc. Exchange v. Industrial Acc. Com., 80 Cal.App.2d 480, 483 [182 P.2d 309]; West v. Industrial Acc. Com., 79 Cal.App.2d 711, 724-725 [180 P.2d 972]; Schneider, Workmen's Compensation Law, 2d ed., 47, p. 412.) This would distort the salutory purpose of the wage-loss legislation into a device whereunder a clever malingerer could reap the profit of cumulative benefits for a single loss of earnings. Nor may we overlook the fact that such an administration of the workmen's compensation law would place a double burden upon industry. (See Industrial etc. Exchange v. Industrial Acc. Com., supra.) [11] Contributions to the unemployment insurance fund are made in part by the employer, and the receipt of benefits by an employee impairs his experience rating, thus adversely affecting his benefit wage ratio and his rate of contribution to the fund. (Chrysler *808 Corp. v. California Emp. Stab. Com., 116 Cal.App.2d 8, 14 [253 P.2d 68].) [12] Likewise, the rates paid by the employer for his insurance under the workmen's compensation act depend on the benefits which are paid out in his behalf. Payments of unemployment insurance benefits and an award of workmen's compensation for temporary partial disability to an employee who has experienced but one loss of wages would have the effect of taxing the employer twice.
 [13] It cannot be gainsaid, as the commission argues, that there is no provision in the Labor Code which expressly prohibits the collection of both unemployment insurance and workmen's compensation benefits for the same period. Nor do we so hold. What we do hold is that in the light of the manifest legislative intent to provide a correlated system of social insurance and to avoid dual benefits, the amount of the workmen's compensation award for temporary partial disability should be diminished by the amount of benefits received as unemployment insurance. Such a procedure does not oust the commission of its jurisdiction to award an employee an amount it considers him entitled to, since the employee does receive such total amount. It merely restricts the employee's benefits to that amount by giving due consideration to benefits already received by the employee from an agency charged with the administration of a coordinate part of the legislative scheme of wage-loss legislation.
 [14] This conclusion is fortified by the provision of Labor Code, section 4654, which reads: "Temporary partial disability. If the injury causes temporary partial disability, the disability payment is 65 per cent of the weekly loss in wages during the period of such disability." (Italics added.) The legislative intent to relate the award to loss of wages in a particular week is clearly disclosed. If an employee's loss of wages due to a temporary partial disability in a particular week is in part diminished by the receipt of unemployment insurance benefits for that week, to the extent of those benefits he has not suffered a wage loss. It would therefore be proper for the commission, in any realistic computation of his wage loss for that week, to consider those benefits provided by a parallel segment of the social insurance program. [15a] Attention is also directed to Labor Code, section 4657, which, so far as is here relevant, reads: "In case of temporary partial disability the weekly loss in wages shall consist of the difference between the average weekly earnings of the injured employee and the weekly amount which the injured *809 employee will probably be able to earn during the disability. ..." (Italics added.) The commission is here authorized to compute the employee's wage loss by taking into consideration income he will probably be able to earn in a given week despite his disability. If the employee cannot find work though, as in the instant case, he is admittedly available for work, and if, as here, he receives unemployment insurance benefits for his involuntary idleness, such benefits, being in lieu of earnings, should be subtracted in computing the employee's wage loss.
 [16] The commission argues that in section 4903 of the Labor Code the Legislature has expressly taken into consideration the possibility that unemployment insurance benefits might be erroneously paid to an employee who, in fact, was entitled to receive temporary total disability payments under the Workmen's Compensation Act, and has provided for a lien against its award for the amount of such benefits. [fn. 4] It observes that no provision is made for a lien where an award for temporary partial disability is made. This is entirely logical. A determination by the commission that an employee was totally disabled, and the granting of an award on that basis, during a period for which he received unemployment insurance on the basis of his representation that he was available for work, would otherwise create a glaring inconsistency. A lien in favor of the Employment Stabilization Commission is created to enable it to recover funds erroneously paid, since such payments were predicated on the theory that the employee was available for work. But in a case of temporary partial disability, where the employee is available for work and is competing on the labor market, payment to him of unemployment insurance benefits, if he is otherwise qualified, is not erroneous. No grounds for a lien therefore exist, since the Employment Stabilization Commission is not entitled to a return of such amounts. However, the commission, under the reason and authority hereinabove recited, achieves an equitable result by deducting such payments in computing the wage loss for the week.
 [17a] In the interest of completeness, we deem it advisable to discuss another aspect of the problem not raised in the *810 briefs. This concerns the effect of section 3752 of the Labor Code, which provides: "Liability for compensation shall not be reduced or affected by any insurance, contribution or other benefit whatsoever due to or received by the person entitled to such compensation, except as otherwise provided by this division." This language was contained in the Boynton Act of 1913 (Stats. 1913, ch. 176, 34, p. 297) and has remained unchanged in every reenactment or amendment of the workmen's compensation laws. It was adopted long before the existence or development of the comprehensive legislative programs for the amelioration of wage losses now in effect and was clearly intended to accomplish no more than to protect the private financial resources of a disabled worker eligible for workmen's compensation from being used as a basis for curtailing the employer's liability for such compensation. It would be out of harmony with the principles previously discussed to take this language out of the context of the circumstances under which it was adopted and extend it to cover benefits received by the employee under a parallel act which is part of the pattern of wage-loss legislation. [18] " '[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]' " (Stafford v. Los Angeles etc. Retirement Board, 42 Cal.2d 795, 799 [270 P.2d 12]; Stafford v. Realty Bond Service Corp., 39 Cal.2d 797, 805 [249 P.2d 241].) [17b] In commenting upon a workmen's compensation statute of substantially similar phraseology, the court stated in Mizrahi's Case, 320 Mass. 733 [71 N.E.2d 383, 385]: "This section was designed to make sure that the employee would not lose the full advantage of any savings or insurance of his own and of any sick benefits or other benefits to which he might be entitled from such sources as fraternal orders, benefit associations, pension plans, governmental or otherwise, and the like. In that field it should be broadly construed. But it cannot reasonably be supposed that it was intended to save to the employee the fortuitous advantage of receiving double compensation for the same injury or incapacity ... The section must be read as an integral part of the act and construed in harmony with the purposes of the act." In Pierce's Case, 325 Mass. 649 [92 N.E.2d 245, 251], the court squarely held that the benefits received by an employee under the Unemployment Insurance Act were not such "benefits" as were exempt from deduction under the section of the Massachusetts workmen's compensation law similar to *811 Labor Code, section 3752. In the light of the essential purpose of section 3752 to exempt only the personal resources of the injured employee, and for the compelling reasons stated in our discussion of the legislative intent to create a synchronized system of employee protection against the hardship of wage loss and to avoid overlapping benefits, [fn. 5] it seems clear that section 3752 was not intended to include payments received under the Unemployment Insurance Act.
 [15b] Petitioner also contends that in entering its award of maximum temporary partial disability payments for Moore, the commission failed to give effect to Labor Code, section 4657. We think this argument well taken. Section 4657 provides: "In case of temporary partial disability the weekly loss in wages shall consist of the difference between the average weekly earnings of the injured employee and the weekly amount which the injured employee will probably be able to earn during the disability, to be determined in view of the nature and extent of the injury. In computing such probable earnings, due regard shall be given to the ability of the injured employee to compete in an open labor market. If evidence of exact loss of earnings is lacking, such weekly loss in wages may be computed from the proportionate loss of physical ability or earning power caused by the injury." Section 4654 of the Labor Code, which is correlated with section 4657, reads: "If the injury causes temporary partial disability, the disability payment is sixty-five per cent of the weekly loss in wages during the period of such disability."
 These sections taken together establish the standard by *812 which a weekly wage loss attributable to a temporary partial disability may be fixed. Where the employee so disabled has, in fact, established himself in an occupation paying less than he regularly earned before, his weekly wage loss can be quite readily ascertained. However, where such employee, although able and available for work has at the time of the hearing been unable to secure employment, section 4657 comes into play by providing the yardstick by which his weekly wage loss is to be measured.
 In its brief, the commission acknowledges there "is no question that Moore was able to perform light work, that he was available for such light work and that he made a conscientious and sincere effort to seek such work on his own behalf." The requirement of the statute before us is that an employer pay compensation to an injured employee during his temporary partial disability in an amount representing the difference between his earnings before injury and what he "will probably be able to earn during the disability," giving "due regard ... to the ability of the injured employee to compete in an open labor market."
 [19] It is the duty and function of the commission to weigh the evidence and make findings of fact. (Lab. Code, 115.) [20] The difference between the earnings of the employee before an injury and his probable ability to earn thereafter because of the nature of his injury is primarily a question of fact upon which findings must be made. (Tarascio v. S. C. Poriss Co., 116 Conn. 707 [164 A. 206, 207].) It is a matter to be established by proof, and cannot be arbitrarily fixed. (See Giovanniello v. Transit Dev. Co., 212 App.Div. 188 [208 N.Y.S. 581]; Vogler v. Ontario Knife Co., 223 App.Div. 550 [229 N.Y.S. 5].) [21] Loss of wages due to an inability to secure work which has its origin merely in general business conditions or the slackness of the demand for labor furnishes no basis for an award of workmen's compensation. (Johnson v. Cluett Peabody Co., 2 I.A.C. 10, 13; Jordan v. Decorative Co. 230 N.Y. 522 [130 N.E. 634, 635]; 1 Campbell, Workmen's Compensation, 839, pp. 746-747.) [22] Though the workmen's compensation act is to be liberally construed to extend its benefits for the protection of those coming within its provisions, it is not intended to provide unemployment insurance benefits. (Johnson v. Cluett Peabody Co., supra; McCormick S.S. Co. v. United States Employees' C. Com., 64 F.2d 84, 85.) [23] To sustain an award such as has been made herein, the evidence must show *813 and the commission must find that the employee's probable inability to earn any amount whatsoever is traceable to the injury, whether it be through an inability to perform work or an inability to procure work. (Reilley v. Carroll, 110 Conn. 282 [147 A. 818].)
 [24] In this case, the evidence was not such as to necessarily require a finding that Moore's disability was of a type which rendered him unable to compete in the open market for some generally available line of work under the "odd-lot" doctrine enunciated in Meyers v. Industrial Acc. Com., 39 Cal.App.2d 665 [103 P.2d 1025]. [fn. 6] The evidence as readily lends itself to the interpretation that Moore's failure to obtain "light" employment or janitorial work was caused in part by his disability and in part by economic conditions. Under these circumstances, the commission should have made appropriate findings of fact as to whether Moore was an "odd-lot," and if not, as to what earnings were reasonably to be anticipated by Moore in his then state of disability, taking into consideration the factors enumerated in section 4657. The commission's award is unsupported either by a finding that Moore's disability brought him within the "odd-lot" category or by any finding as to his probable earnings during his period of temporary partial disability. [25] The failure to find on a material fact essential to the proper disposal of the case was error. (Martin v. Industrial Acc. Com., 82 Cal.App.2d 737, 740 [187 P.2d 101].)
 Accordingly, the award is annulled and the cause remanded to respondent commission for further proceedings in consonance with the views herein expressed.
 Moore, P. J., and McComb, J., concurred.
 A petition for a rehearing was denied December 17, 1954 when the following opinion was rendered:
 THE COURT.
 In its petition for rehearing, the commission has made two significant changes in its position: First, it *814 has receded from its prior contention that the fact Moore received unemployment insurance benefits is completely immaterial in arriving at its award of workmen's compensation benefits. Second, it concedes that although it had previously argued that the compensation law does not provide for a lien in favor of the Department of Employment against temporary partial disability benefits, it has since reevaluated its position in the light of the particular facts of this case. Thus, it now agrees that "the employee is not entitled to both the maximum temporary partial disability indemnity and the unemployment insurance benefits for the same period of unemployment," but urges for the first time that a lien against the workmen's compensation benefits paid to Moore was allowable to the Department of Employment under section 4903(g) of the Labor Code. It points out that a lien may be allowed on the commission's own motion in a proper case (Lab. Code, 4905). In order to satisfy the language of section 4903(g), which authorizes a lien to the Department of Employment for benefits paid in a period during which the employee has received workmen's compensation for temporary total disability, the commission reasons that the facts herein establish that Moore, although found only to be temporarily partially disabled, was in effect an "odd-lot" and was thus entitled to his award of disability benefits "as though for temporary total disability." Hence, argues the commission, the Department of Employment had erroneously paid Moore unemployment insurance benefits and was entitled to a lien. We need not here undertake to consider either the validity or implications of this ingenious interpretation of the statute, since the record shows no lien was ever requested by or awarded to, the Department of Employment and the issue was never before this court. Nonetheless, the new position adopted by the commission serves to emphasize that the award as made cannot stand, and that the cause must be remanded for further proceedings to enable the commission to make adequate findings of fact and a correct award.
 The commission's new position serves also to buttress our conclusion that its findings, as made, were deficient in failing to find on material facts. If the commission's theory that the Department of Employment is here entitled to a lien is to prevail (assuming, but without deciding, that it is tenable), findings would be necessary that Moore was, in fact, unavailable for work and that the unemployment insurance benefits paid him were consequently erroneous. But as has *815 been pointed out, the commission failed to make findings "upon all facts involved in the controversy" (Lab. Code, 5313) though it was under a statutory duty to make specific findings on all material issues presented in a claim for compensation. (Pierson v. Industrial Acc. Com., 98 Cal.App.2d 598, 601 [220 P.2d 794]; California Shipbuilding Corp. v. Industrial Acc. Com., 85 Cal.App.2d 435, 436 [193 P.2d 61].)
 The fallacy of the commission's contention that the general finding it made necessarily implies that Moore was in the "odd-lot" category is apparent from an examination of that finding, which reads:
 "3. Said injury further caused temporary partial disability beginning October 17, 1953, to and including February 16, 1954, and thereafter, entitling the applicant to compensation on a wage loss basis. For any week or weeks beginning on and after October 17, 1953, and until the termination of temporary partial disability herein or further order of the commission in which week or weeks applicant's earnings fall below $53.85 per week, he is and shall be entitled to compensation consisting of 65 percent of the difference between $53.85 and the amount earned in said week or weeks. Jurisdiction is reserved to find thereon in the event the parties are unable to adjust said matter."
 It can hardly be said that this finding, even by implication, responds to the particular issues posed. It purports only to find that Moore's injury caused a temporary partial disability and then indulges in a conclusion of law as to the amount of the award to which Moore shall be entitled in a week when his "earnings fall below $53.85 per week." This language is the very opposite of an implication that Moore was an "odd-lot"; rather, the finding is pregnant with suggestion that Moore could obtain earnings, although of a fluctuating character. There is therefore no basis for an implication that in any week when Moore was not working or had no earnings it was purely ascribable to the fact that Moore's physical condition was that of an "odd-lot" rather than to the vicissitudes of the industrial market. What the finding does indicate is that the commission was oblivious to its responsibilities under section 4657 of the Labor Code, which was patently ignored. While that section may be difficult to apply, administrative inconvenience does not excuse compliance with the legislative mandate. Petitioner was entitled to a finding as to the effect of Moore's injury on his *816 probable income or earning ability in accordance with the criteria and formulae therein set out. An award cannot be allowed to stand where there is a failure to find on material issues. (General Acc. etc. Corp. v. Industrial Acc. Com., 196 Cal. 179, 191 [237 P. 33]; California C. I. Exch. v. Industrial Acc. Com., 190 Cal. 433 [213 P. 257]; Pierson v. Industrial Acc. Com., supra; Moore Shipbuilding Co. v. Industrial Acc. Com., 70 Cal.App. 495 [233 P. 392].)
 Because of certain observations made by the commission in its petition for rehearing, we reiterate, as we have taken pains to emphasize heretofore, that upon remand the commission is, of course, free to exercise its independent judgment in evaluating the evidence as to the degree of Moore's temporary partial disability and his probable earnings, if any, irrespective of any determination thereof which the Department of Employment may have made.
 "(g) Unemployment Compensation Benefits. The amount of unemployment compensation benefits paid erroneously to the injured employee for a period for which he was unable to work and for which he received temporary total disability payments under this division." (Italics added.)
NOTES
[fn. 1] 1. To insure clarity and to obviate possible confusion with compensation benefits awarded under the Workmen's Compensation Act, payments under the Unemployment Insurance Act will be referred to in this opinion simply as unemployment insurance benefits.
[fn. 2] 2. The law relating to unemployment insurance and disability compensation was consolidated and revised and enacted as the Unemployment Insurance Code at the 1953 Regular Session of the Legislature, and became operative January 1, 1954 (Stats. 1953, ch. 308, p. 1457).
[fn. 3] 3. See note 2, supra. Disability compensation is governed by div. 1, part 2, of the code, 2601 et seq.
[fn. 4] 4. "The commission may determine and allow as a lien against any amount to be paid as compensation: ...
[fn. 5] 5. Judicial recognition of the legislative objective of formulating a correlated scheme of protection against loss of wages appears in the following extract from Bryant v. Industrial Acc. Com., 37 Cal.2d 215, 218 [231 P.2d 32], where Mr. Justice Schauer wrote: "Prior to the adoption of the unemployment compensation disability insurance program, the Senate Interim Committee on Unemployment Insurance reported that 'In California where a worker is unemployed because of injury arising within the scope of his employment, some protection is offered by the Workmen's Compensation Act. If an individual is unemployed because of lack of work, benefits are provided under the Unemployment Insurance Act. However, for the worker who is unemployed because of an injury not within the reach of the Workmen's Compensation Act no protection whatever is granted. Your committee feels it is an anomalous situation and a serious gap in providing economic security for the large working population of the state.' (Senate Journal, May 7, 1945, p. 85.) The committee recommended adoption of an insurance program 'to pay benefits to individuals who are unemployed because of illness or injury for which no compensation is otherwise made' (Id., p. 126; italics petitioners') and further recommended 'That no disability benefits be paid to an individual receiving unemployment insurance benefits or workmen's compensation' (Id., p. 89.)"
[fn. 6] 6. Broadly stated, the Odd-Lot Doctrine declares that if the effects of the accident have not been removed, it is not sufficient to entitle an employer to a reduction in the weekly compensation to show that the workman has the physical capacity to do some kind of work different from the general kind of work he was engaged in at the time of the accident. Since injury has made the workman's service an "odd lot" in the labor market, it must also be shown that he can actually get such work. The burden is upon the employer, the moving party, to show that the workman can actually get a job within the scope of his limited capacity." (1 Campbell, Workmen's Compensation, 745-6.)