Alice B. PAGE

v.

GENERAL ELECTRIC COMPANY
and/or Electric Mutual Liability
Insurance Co.

Supreme Judicial Court of Maine.

Sept. 1, 1978.

**304**

Paine, Lynch & Weatherbee by Peter M. Weatherbee, Bangor (orally), for plaintiff.

Robinson, Hunt & Kriger by James S. Kriger (orally), Sarah M. Allison, Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

The defendants appeal from a pro forma decree entered by the Superior Court affirming a decree of the Industrial Accident Commission[1] dated December 27, 1976. The Commission's decree ordered the defendants to pay compensation to plaintiff Alice B. Page for total incapacity suffered by her from October 3, 1975, to July 28, 1976, and for partial incapacity thereafter.

The appellants contend that the Commission erred in finding Mrs. Page to have been totally incapacitated during the stated period. They argue that the Commission should have taken into account the unemployment compensation which she collected during part of the same period, either finding her only partially disabled, or else deducting the unemployment from her total disability award.

We deny the appeal.

FACTS

The facts brought forth in the hearing before the Commission are as follows:

The appellee was employed by General Electric Company (G.E.) as a finish polisher, a job which involved the grinding and polishing of turbine blades. In March of 1975, she suffered swelling and discomfort in her left wrist and hand. She began doing only smaller, lighter blades until the following September when she was required to work with the heavier blades again. The symptoms returned, and Mrs. Page left work permanently on October 2, 1975.

Doctors testified that she was suffering from "Raynaud's Phenomenon," a condition involving constriction of the veins of an extremity, followed by dilation. Based on that testimony, the Commission found that this condition was caused by the vibration encountered in the process of polishing blades.

After she left her job, Mrs. Page was told by her doctor that she could take other work as long as it did not involve either cold or vibration, which would revive her symptoms. She looked diligently but unsuccessfully for work, within the limits prescribed by her doctors, from employers, including G.E., within the Bangor-Brewer area where she lived. She looked from January of 1976 until the following July 29th when she found employment as a cashier. She testified that potential employers turned her away after she told them she had left G.E. because of disability.

1. The Commission is now legally denominated "Workers' Compensation Commission." P.L.1978, ch. 612.

From March 20th until the time she obtained her job, she received unemployment compensation at the rate of $74.00 a week.

The Commission's decree awarded $106.05 a week for total incapacity for the period of her unemployment, and for partial compensation thereafter, covering the difference in pay between her new job and her old one. G.E. and its liability insurer appeal from the award for total incapacity, seeking to have it reduced to an award for partial incapacity, or to have the sum of the appellee's unemployment benefits set off against it.

## THE COMMISSION'S FINDING OF APPELLEE'S TOTAL INCAPACITY

■ The Commission's findings of fact are final if supported by competent evidence and the reasonable inferences which arise therefrom. *McQuade v. Vahlsing, Inc.,* Me., 377 A.2d 469, 471 (1977); *Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1118 (1976). The extent of an employee's incapacity is a question of fact. *McQuade,* 377 A.2d at 471. Under Maine law an employee is entitled to compensation for total disability not only when he is incapable of doing any work, but also when he is partially disabled and is unable to find work after reasonable efforts, "either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable." *Lancaster v. Cooper Industries,* Me., 387 A.2d 5, 7 (1978), *citing Bowen v. Maplewood Packing Co., supra* at 1119. "The reasonableness of a work search is a mixed question of law and fact . . . .. [but] the question of market stability is a pure question of fact." *Lancaster, supra* at 7.

The Commission found that there was no work available within the appellee's capacity and that her loss of earnings was, therefore, a result of her injury. The sole question, then, is whether this conclusion was supported by the evidence. *Cf. Justard v.* *Oxford Paper Co.,* Me., 384 A.2d 441, 443 (1978).

■ The appellants contend that the appellee failed to show that there were no jobs which she could perform in the Bangor-Brewer area. However, that is not the only basis on which she could be entitled to compensation. Mrs. Page testified that several employers would not hire her because of her disability, regardless of whether or not they had work available which she could do. Under the principle stated above, this was sufficient to establish incapacity. *Lancaster v. Cooper Industries, supra; Ray's Case,* 122 Me. 108, 119 A. 191 (1922).

*Ray's Case* presented the same situation. It did not matter that Ray was partially able to work if his failure to find work after reasonable effort was

> "not shown to have been due to any fault of his, nor to general business depression, but . . . rather to a general disinclination on the part of persons requiring help to employ . . . crippled men when sound men are available."

*Id.* at 111, 119 A. at 192. Under this principle the Commission's findings are thoroughly supported by the evidence.

■ The appellants also argue that appellee should have been compensated only for partial incapacity because she applied for and received unemployment benefits during the period in question. Under 26 M.R.S.A. § 1192(3), in order to qualify for unemployment benefits it is necessary for an unemployed person to be "able to work"; therefore, the appellants argue, Mrs. Page could not have been totally incapacitated. This argument has no merit. To be eligible for total disability compensation one must have placed himself on the labor market and made a diligent effort to find work. This requirement corresponds to the conditions of eligibility for unemployment set out in 26 M.R.S.A. § 1192(2), (3); appellee could clearly meet both conditions at once.

In *Dubois v. Maine Employment Security Commission,* 150 Me. 494, 507, 114 A.2d 359, 366 (1955), we ruled that claimants for unemployment benefits were "available" for

work when they "demonstrated their ability and willingness to accept suitable work," notwithstanding the fact that they were partially disabled because they were too old for the jobs which they had left. That they had received the equivalent of a pension fund was held not to preclude unemployment benefits. In *McQuade v. Vahlsing, Inc.,* 377 A.2d at 471, we held that the fact that a workmen's compensation claimant received Social Security benefits "does not necessarily mean that he has withdrawn from the labor market . . . [or] no longer has earning capacity." *McQuade,* which was remanded for further fact-finding, held that if it were found that the claimant had not withdrawn from the labor market, he would be entitled to workmen's compensation for total incapacity under the same principle that was applied in *Ray's Case, supra; McQuade, supra* at 470–71, citing *Dunkin Donuts of America, Inc. v. Watson,* Me., 366 A.2d 1121 (1976).

Here, the appellee was seeking and available for work within the limits set by her disability. The mere fact that this made her eligible for unemployment compensation does not mean that she was not also eligible for total disability compensation, given the expanded definition of the latter.[2]

The Florida Supreme Court, faced with a case similar to the one here, concluded:

"A claimant may honestly represent to the unemployment compensation agency that he is able to do some work if a job is made available to him. At the same time, with equal honesty, he might properly represent to the workmen's compensation agency that he was totally disabled during the same period because no one would give him a job in his then physical condition."

*Edwards v. Metro Tile Co.,* Fla., 133 So.2d 411, 412 (1961).

■ The appellants also argue that the Commission's findings of fact were insuffi-

cient to explain and justify its ultimate conclusions, as required by 39 M.R.S.A. § 99. It is true that the Commission's decree did not state why the work which Mrs. Page sought was unavailable, and did not mention the testimony regarding employers' unwillingness to hire her because of her injury. It is clear from the record, however, that the Commission's findings were supported by Mrs. Page's testimony. While we have frequently deplored the failure to set forth specific findings of fact sufficient to explain the Commission's holding, we will uphold a decision when we can clearly "ascertain what the Commissioner had to find in order to reach the ultimate decision." *McQuade v. Vahlsing, Inc.,* 377 A.2d at 471; *Bolduc v. Pioneer Plastics Corp.,* Me., 302 A.2d 577, 580 (1973); *Leclerc v. Gilbert,* 152 Me. 399, 402, 131 A.2d 202, 203 (1957). Here, there is no ambiguity as to the basis of the Commission's findings, as there was in *McQuade,* nor is the record lacking in sufficient evidence to support the conclusion. *Cf. Oliver v. Wyandotte Industries Corp.,* Me., 360 A.2d 144, 148 (1976).

## THE COMMISSION'S REFUSAL TO SET OFF APPELLEE'S UNEMPLOYMENT BENEFITS

■ The appellants assert that even if the Commission was correct in ruling that the appellee was qualified for total disability compensation, nevertheless, the compensation should have been reduced by the unemployment benefits received. The Commission found that it had no jurisdiction or authority to make such a set-off against an otherwise proven case of disability, and that it was up to the Legislature to decide whether such double benefits ought to be allowed.

We agree with the Commission.

The Commission's jurisdiction is limited by statute. *Levesque v. Levesque,* Me., 363

---

**2.** The appellee's unemployment benefits do not constitute "wages" within the meaning of 39 M.R.S.A. § 55, providing that compensation for partial incapacity shall be determined from the difference between wages one is able to earn before and after an accident. The Workmen's

Compensation Act defines wages solely as wages paid for work done, whether by the employee herself, or by those working in the "same or most similar employment." 39 M.R.S.A. § 2(2). *See Parise v. Industrial Commission,* 16 Ariz.App. 177, 492 P.2d 426 (1972).

A.2d 951, 953 (1976). There is no explicit statutory authorization for the deduction of unemployment benefits from otherwise proven claims and, although the Workmen's Compensation statute must be liberally construed, 39 M.R.S.A. § 92, *Levesque,* 363 A.2d at 954, we can find no such implied authority.

We recognize that other courts have reached a different conclusion. *See* Annot., 96 A.L.R.2d 941, § 2 (1964). For example, the California Court of Appeals, in *California Compensation Insurance Company v. Industrial Accident Commission,* 128 Cal. App.2d 797, 276 P.2d 148, 153 (1954), found that the California Unemployment and Workmen's Compensation Acts expressed a "manifest legislative intent to provide a correlated system of social insurance and to avoid dual benefits." The lack of an express prohibition of dual benefits was the result of the fact that

> "the pattern of wage-loss legislation in this state, as indeed throughout the country, did not evolve full-blown in accordance with a master blueprint but emerged piecemeal in response to society's awakening acceptance of the need for an enlightened system."

*Id.* 276 P.2d at 151.

The Maine statutes have a history similar to that of California's, but we find no evidence of an intent to avoid dual benefits, nor do we find that such an intent is the only possible interpretation which can be placed on these laws. The Workmen's Compensation Act was adopted in its original form in 1915 (P.L.1915, ch. 295). The "Unemployment Compensation Law," predecessor of the current Employment Security Law, 26 M.R.S.A. § 1041 et seq., was enacted in 1936 (P.L.1935, ch. 192). The latter Act, passed more than twenty years after the first, made no mention of avoiding double benefits. If the Legislature had wished, it could have amended the earlier act at the time when it created the right to unemployment benefits, or at any time in the forty-two years that followed. It has not done so, nor has it ever amended the Workmen's Compensation Act in this regard. We cannot read an intent to preclude dual benefits into this history.

An instructive comparison may be made with the Massachusetts statutes construed in *Pierce's Case,* 325 Mass. 649, 92 N.E.2d 245 (1950). At the time of *Pierce's Case,* the Massachusetts Workmen's Compensation statute made no mention of unemployment benefits, but the Employment Security Act (G.L. (Ter. Ed.) ch. 151A) had been passed with a provision that workmen's compensation be deducted from unemployment. 325 Mass. at 654, 92 N.E.2d at 249. The Court concluded from this that the Legislature had established a policy against double recovery which should be applied to both Acts, construing them as harmonious and consistent parts of a general plan. Appellants would have us find the same policy in the Maine statutes. To do so we would have to say that the absence from our statute of the explicit provision used in Massachusetts is without significance.[3] This is particularly so because the Massachusetts statute was amended with the express purpose of allowing double recovery, for a limited class of serious injuries, such as loss of a limb. The Court noted in *Pierce's Case* that this amendment was added because a severe handicap, particularly when visible, is an obstacle to obtaining even such work as the victim can do. Double coverage is justified because both economic conditions and the injury contribute to this obstacle.

The Massachusetts Legislature's recognition of the extra difficulty faced by the severely handicapped suggests that another legislature might find that essentially the same difficulty is faced by anyone who cannot find work because of a disability. In the present case, Mrs. Page had indeed been refused employment because of her injury, and precisely for this reason she was eligible for total compensation. We cannot say that the result was contrary to the clear intent of the Legislature.

---

**3.** See 26 M.R.S.A. §§ 1192, 1193 for the conditions for eligibility for unemployment compensation.

308

Whether the Legislature intended to adopt such a policy or not, neither the Commission nor this Court can deny the appellee the full compensation to which she is entitled. The same result has been reached in nine other jurisdictions in which the statutes do not contain express provisions against double coverage. 2 Larson, *Workmen's Compensation,* § 57.65, n. 62, *citing, inter alia, Todd Shipyards Corp. v. Landy,* 239 F.Supp. 679 (N.D.Cal.1965) (Federal Longshoremen and Harbor Workers' Compensation Act is not affected by state unemployment); *Parise v. Industrial Commission, supra; Osterlund v. State,* 135 Conn. 498, 66 A.2d 363 (1949); *Edwards v. Metro Tile Company, supra; Utica Mut. Ins. Co. v. Pioda,* 90 Ga.App. 593, 83 S.E.2d 627 (1954); *see also* Annot., 96 A.L.R.2d 941 § 3 (1964).

In *Utica Mutual Ins. Co. v. Pioda,* 83 S.E.2d at 628, the Georgia Court of Appeals found:

"The two acts are not repugnant. While each seeks the beneficent purpose of insuring the worker from economic insecurity, the two acts seek to remedy economic insecurity stemming from two entirely different sources. The Workmen's Compensation Act was enacted to protect the worker in some measure from the economic hazards consequent upon the worker's exposure to the manifold industrial hazards of today to life and health; that is to say, the Workmen's Compensation Act is in the nature of health and accident insurance against injuries which arise out of and in the course of the worker's employment. The Employment Security Act was enacted to protect the worker in some measure from the loss, through no fault of his own, of employment; that is to say, to insure the worker against loss of a place to work. While under the provisions of Code Ann.Supp. § 54–610(e)(2) a worker who is receiving remuneration in the form of 'compensation for temporary partial disability under the workmen's compensation law' is disqualified to receive unemployment compensation, we find no prohibition against the receipt by a worker of workmen's compensation for total disability

within the meaning of that act while he is receiving unemployment compensation."

We find the above reasoning persuasive.

■ There is one remaining question: the effect of 39 M.R.S.A. § 62, which provides:

"No savings or insurance of the injured employee independent of this Act shall be taken into consideration in determining the compensation to be paid, nor shall benefits derived from any source other than the employer be considered in fixing the compensation due."

The appellants argue that since unemployment compensation benefits are derived from the employer, Section 62 does not preclude the Commission from considering the amount thus received in fixing the quantum of workmen's compensation.

Unemployment compensation benefits are not paid directly from contributions of the employer. Such payments are from the State out of the "Unemployment Compensation Administrative Fund" to which every qualified employer in the State is legally required to contribute in an amount which is fixed by statute. 26 M.R.S.A. § 1221(1)–(16). Workmen's compensation has a different origin since the payment thereof is under a voluntary rather than a mandatory system. The amount of workmen's compensation is paid directly to the employee by either the employer from his own funds or from an insurance company from which the employer has purchased workmen's compensation insurance. Failure to pay the required amount into the Unemployment Compensation Administrative Fund is subject to criminal penalty (26 M.R.S.A. § 1051(3)) in addition to giving the State a right of action to collect unpaid assessments, while failure to insure against industrial accident is not subject to such strictures but does deprive the employer of the right to assert certain civil defenses in an action against him by the injured employee. 39 M.R.S.A. § 3.

39 M.R.S.A. § 62 does not mandate giving credit to the payor of workmen's compensation of the amount received by an employee

for unemployment compensation. This section is identical to Section 22 of the original Workmen's Compensation Act. P.L.1915, ch. 295, § 22. This Court has determined that the intent of the section "clearly enough" was only to preclude deduction of any personal savings or individual insurance of the employee when computing the amount of workmen's compensation to be paid. *Gladys Gross' Case*, 132 Me. 59, 62, 166 A. 55, 56 (1933). When the Maine Legislature enacted our Unemployment Security Law, it did not reduce the amount of compensation paid thereunder by any compensation from workmen's compensation. To agree with appellant's position would require us now to read this statute in a different context than that in which it was read when enacted and to give it an intent contrary to that expressed in *Gladys Gross' Case*. It is indeed prophetic that the Legislature did not adopt such language when it enacted the Employment Security Law only two years after the decision in *Gladys Gross' Case*. In short, neither act is dependent on the other and each has a history unrelated to the other, unlike the comparable enactments in Massachusetts. *Pierce's Case, supra.*

In conclusion, neither Maine's Unemployment Security Law, nor its Workmen's Compensation Act, provides any basis for denying or reducing the amount of workmen's compensation payments on the ground that the claimant is receiving unemployment compensation benefits. *See Gullifer v. Granite Paving Co.*, Me., 383 A.2d 47, 50 (1978).

If we were to adopt appellant's argument we would, in effect, amend the statutes, a power properly reserved for legislative consideration.

The entry is:

Appeal denied.

Judgment affirmed.

It is further ordered that the employer pay to the employee $550.00 for her counsel fees plus her actual reasonable out-of-pocket expenses of this appeal.

McKUSICK, C. J., did not sit.

POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ., concurring.