Robert E. MARSHALL and Beatrice E.
Marshall, Plaintiffs,

v.

John W. GARDNER, Secretary of Health,
Education and Welfare, Defendant.

Civ. A. No. 2330.

United States District Court
S. D. West Virginia,
Huntington Division.

June 27, 1968.

Harry F. Thompson, Jr., Huntington, W. Va., for plaintiffs.

Milton J. Ferguson, U. S. Atty., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. This matter was previously before the Court and by order dated June 12, 1967, the cause was remanded to the Secretary for further administrative action. We are again called upon to review the Secretary's final decision which was rendered by the Appeals Counsel on February 29, 1968. The final decision holds that Robert E. Marshall (hereinafter referred to as plaintiff) is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act.

 Plaintiff last met the special earnings requirements of the Social Security Act through the quarter ending March 31, 1962. Under the Act, 42 U.S. C.A. § 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. To meet this requirement, the claimant must establish that he suffered from such disability on or before the last day of his special insured status. Davidson v. Ribicoff, 204 F.Supp. 368 (S.D.W.Va.1962). Thus the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to March 31, 1962, when he last met the special earnings requirements, though such proof need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

 The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the courts are not to try the case de novo and if the findings of the Secretary are supported by substantial evidence, the courts are bound to accept them, Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the administrative agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based

on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court on this review is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

■■ Prior to the submission of his present application, plaintiff had filed three other applications seeking to establish his right to a period of disability and disability insurance benefits under the Act. On July 18, 1960, he filed an application seeking benefits wherein he alleged that he became unable to work on March 19, 1958, because of a "broken back." On September 29, 1960, the Division of Disability Operations informed him that his impairments had not been found to be disabling within the meaning of the Act and that his application had, therefore, been denied. On February 10, 1961, plaintiff filed a request for reconsideration, however, before a decision could be made on this request he filed a second application, dated February 10, 1961, alleging that he became unable to work on March 19, 1958, because of a "back injury-paralysis due to fall." Plaintiff was notified on November 2, 1961 of the initial denial of this application as well as the denial of his request for reconsideration filed in conjunction with his earlier application. On November 14, 1961, he filed a request for hear-

ing before a hearing examiner, which hearing was held on July 18, 1962, in Huntington, West Virginia. The hearing examiner issued a decision, based upon both of plaintiff's previous applications, finding him not entitled to benefits under the Act. No further action was taken with respect to these two applications. On October 1, 1962, plaintiff filed a third application, which was denied initially and upon reconsideration and no appeal was taken from the latter decision. Plaintiff filed his fourth and current application on February 23, 1966. Inasmuch as this application was filed more than four years after the date of notice of the initial determination on both applications before the hearing examiner rendering the 1962 decision, plaintiff is now barred from attempting to reopen that decision, and, under the theory of *res judicata*, the decision of the hearing examiner finding plaintiff not disabled within the meaning of the Act is binding on this Court.[1] Prior to the enactment of the 1965 Amendments to the Social Security Act, the prospective life of an application was limited to three months from the date of filing. The most recent application pending before the hearing examiner in 1962 was dated February 10, 1961. Thus, his decision finding plaintiff not disabled within the meaning of the Act is binding through May 10, 1961—the effective period of the February 10, 1961 application. Based upon these principles, there remains for consideration in this proceeding the following: (1) disability, as defined in the pre-1965 Amendments[2] ex-

---

1. Social Security Regulations, Section 404.-957, provide in part as follows:

"An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final under paragraph 404.908, paragraph 404.916, paragraph 404.940, or paragraph 404.951 may be reopened:

(a) Within 12 months from the date of the notice of the initial determination (see paragraph 404.907), to the party to such determination, or

(b) After such 12-month period, but within 4 years after the date of the no-

tice of the initial determination (see paragraph 404.907), to the party to such determination, upon a finding of good cause for reopening such determination or decision * * *."

2. The 1965 Social Security Amendments amended the definition of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to * * * last for a continuous period of not less than 12 months * * *."

isting or arising between May 11, 1961 and March 31, 1962, when plaintiff last met the special earnings requirements for disability purposes, and (2) disability as defined in the 1965 Amendments arising between March 10, 1958 (the alleged original onset date of impairments) and March 31, 1962.

Plaintiff was born on November 2, 1926, is married and the father of three children. He completed the first seven grades in school and is able to read and write. His work history prior to 1958 has consisted almost entirely of activities in and around the coal mines of Southern West Virginia. His duties in this capacity have included loading and unloading coal trucks, picking slate, timbering, and operating shuttle cars and supply motors. In 1963 and 1964, with the aid of the West Virginia Rehabilitation Office, he undertook and successfully completed an eighteen hundred hour training course in barbering at the Huntington Barber College. In 1965, he was employed by Toler's Barber Shop in Branchland, West Virginia, and worked in this shop for approximately nine months. In June of 1966, he left the Toler Shop to accept employment as a barber with the Veterans Administration Hospital, Huntington, West Virginia. He was employed by this hospital from June 4, 1965 to January 15, 1966. He worked eight hours a day and during the first six months of this employment he missed only sixteen hours of work because of sickness. In the early months of 1966, he developed tuberculosis, requiring a period of treatment and convalescence at the Pinecrest Sanitarium, Beckley, West Virginia. He has not engaged in any work activity since his discharge from the Sanitarium.

The medical evidence of record in this proceeding is voluminous and in this review we shall confine our remarks to a summary of its more important features. Plaintiff's impairments prior to the expiration of his insured status in 1962 stem from a number of mine accidents which have resulted in injuries primarily affecting his back. He has apparently had at least three operations, the first in 1948 and the second and third in 1955. These operations involved the removal of herinated lumbar discs in the lower lumbar spine and a spinal fusion which was apparently not completely successful. As a result of the injuries and subsequent operations, he has at times experienced acute pain in the lumbosacral region radiating down through both legs, limiting considerably his ability to bend, stoop or lift. In addition to his spinal impairments, he suffers from a complete loss of vision in the left eye and a pulmonary condition diagnosed as asthma.

■ As can be seen from plaintiff's medical history, his impairments are of a serious nature, however, in rendering a decision in this case we must consider these findings, not in the abstract, but as they have affected plaintiff's ability to engage in substantial gainful activity. Thus, even though an enumeration of the medical findings might initially lead to the conclusion that impairments have been established of such proportions that engagement in work activity is highly unlikely, if in fact a claimant has engaged in employment which can reasonably be classified as "substantial gainful activity," he is thereby precluded by the definition of "disability" from obtaining benefits under the Act. Hanes v. Celebrezze, 337 F. 2d 209 (4th Cir. 1964). In plaintiff's case, such conditions necessitate a consideration of his barbering activities from 1963 to 1966. The evidence establishes that between 1963 and 1966 plaintiff, both as a student and as a licensed barber, has spent many hours of work in this profession. This activity involved full eight-hour days and resulted in substantial monetary returns. According to the report from the Veterans Administration, absenteeism due to illness does not appear to have been substantial and from this it can be inferred that plaintiff was not precluded by his impairments from ac-

Previously the physical or mental impairment had to " * * * be expected to result in death or to be of long-continued and indefinite duration."

tually pursuing his chosen occupation. As the Fourth Circuit Court stated in the case of Hanes v. Celebrezze, supra, "the inference of ability to engage in substantial gainful activity is stronger where the job itself constitutes substantial gainful activity." Another decision of the Fourth Circuit Court, Simmons v. Celebrezze, 362 F.2d 753, 755 (4th Cir. 1966), concerning the persuasiveness of evidence with respect to the work activities of a claimant, seems particularly relevant for the purpose of reaching a decision in the present case. Judge Sobeloff, writing the opinion in that decision, states,

> "There is evidence that *this* claimant can engage and has engaged in a *particular* occupation. This concrete showing compels affirmance of the Secretary's conclusion that the claimant's disabilities are not of such severity as to prevent him from engaging in substantial gainful activity, despite the fact that a contrary conclusion may also be reasonable. The case is, therefore, quite different from those where the Secretary, in denying benefits, relies on abstractions based on the Department of Labor's 'Dictionary of Occupational Titles' to support his determination that jobs are generally available to 'average' persons of the claimant's general class."

This case is to be distinguished from those cases in which a claimant suffering from a *particular* disability attempts to engage in some work activity, but is prevented by that *same* disability from continuing to work. In these cases it can be fairly said that the impairment or impairments have prevented engagement in substantial gainful activity. In the present case, plaintiff's barbering activities were curtailed not because of the existence of the spinal condition, but as the direct result of the onset of a tubercular disease—a disease he contracted several years after the expiration of his insured status. Thus, considering all the medical evidence, the evidence concerning plaintiff's employment, as well as the testimony of the plaintiff, we cannot in good conscience say that the Secretary's find-ing with respect to the ability of the plaintiff to engage in substantial gainful activity during the critical period of his application is not supported by substantial evidence of record.

Accordingly, viewing the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for summary judgment must be granted.