Carl Fultz

*v.*

Union Carbide Corporation.

409 S.W.2d 541.

(*Knoxville,* September Term, 1966.)

Opinion filed November 14, 1966.

H. CALVIN WALTER, of counsel, WALTER, GILBERTSON & CLAIBORNE, Knoxville, for plaintiff in error.

McAFEE LEE, of counsel, KEY & LEE, Knoxville, for defendant in error.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The parties will hereinafter be referred to as they appeared in the trial court; that is, Carl Fultz as the

plaintiff, and Union Carbide Corporation as the defendant.

This is an appeal from a declaratory judgment rendered in favor of the defendant by the Circuit Court of Knox County, Tennessee.

The pertinent events which gave rise to this appeal are as follows:

On or about April 26, 1962, while employed by the defendant, Union Carbide Corporation, the plaintiff sustained an injury to his back which allegedly rendered him totally and permanently disabled.

As a result of this injury, plaintiff and the defendant, along with the defendant's insurer consummated a compromise settlement of the plaintiff's claim of workman's compensation. In accordance with the terms of the compromise settlement, the defendant's insurance carrier, Aetna Casualty and Surety Company, paid to the plaintiff the lump sum of $10,200.00 as compensation for a seventy-five (75%) per cent permanent partial disability to the plaintiff's body as a whole. On June 3, 1964, the settlement was approved by the Circuit Court of Knox County.

Under the terms of an employment contract existing between the defendant and the plaintiff's union, the Oil, Chemical and Atomic Worker's Union of AFL-CIO, plaintiff was entitled to certain pension benefits from the defendant. Defendant readily conceded that the plaintiff was eligible and had been approved for such benefits; however, it asserted that Section 4, Part B of the Pension Plan entitled it to deduct from the pension, otherwise due to plaintiff, the $10,200.00 paid to the plaintiff pursuant to the workman's compensation settlement.

The plaintiff refused to accede to the defendant's contention as to the deductibility of the settlement; and, in an effort to settle the dispute, he instituted this suit for a declaratory judgment in the Circuit Court of Knox County. Being of the opinion that the workman's compensation settlement was deductible, the trial judge decided in favor of the defendant.

The plaintiff seasonably perfected his appeal and is presently before this Court to assail the correctness of the trial judge's ruling.

Plaintiff's assignment of error, as well as the contentions of both parties, depends upon the meaning and application of Section 4, Part B of the Pension Plan, which governs the rights of the parties in this case. That provision declares:

"Section 4—*Amount of Disability Benefit.*

"The monthly Disability Benefit for an employee who qualifies therefor shall be computed by taking:

"2. 1.1% of the employee's average straighttime monthly earnings during the 120 calendar months next preceding the date on which the employee ceases active employment as a result of total and permanent disability, multiplied by his company Service Credit (subject to the provisions regarding minimum benefits; *and deducting therefrom*

"b. 1. *Any amount paid periodically, or which would be payable if applied for,* taken on a monthly basis, under any workman's compensation insurance law now in effect or as hereafter amended or enacted, *except statutory payments for the loss of a bodily member,* and * * *." (Emphasis added.)

In essence the foregoing provision declares that, with the exception of statutory compensation for an employee's loss of a bodily member, any amount of workman's compensation awards paid periodically, or so payable if applied for, are deductible by the employer from the recipient's pension fund.

With respect to the Pension Plan, plaintiff asserts:

(1) that the trial judge erred in holding that the lump sum payment made pursuant to the workman's compensation settlement, was in lieu of periodic payments and therefore within the intent and meaning of Section 4, Page 13 of the plan.

(2) that the trial judge erred in determining that plaintiff's seventy-five per cent (75%) permanent partial disability to the body as a whole is not a "loss of a bodily member," so as to come within the exception of Section 4, Part B of the plan.

The only argument which plaintiff's counsel makes to support his first contention, that the lump sum settlement cannot be regarded as in lieu of periodic payment, is that the plaintiff had no choice or selection in the method of payment. We believe this position is untenable.

Under authority of T.C.A. sec. 50-1023, workman's compensation awards can be commuted to lump sum payments *only* with the consent and approval of the circuit, chancery, or criminal court. This Court has repeatedly declared that this statute necessarily implies an agreed stipulation or order, and hence, requires an agreement between the employer and the employee as a basis of consent. See, e.g., *American Zinc Co. v. Lusk*, 148 Tenn. 220, 255 S.W. 39; *Knoxville Knitting Mills Co.*

*v. Galyon,* 148 Tenn. 228 255 S.W. 41, 30 A.L.R. 976; *Kamarad v. Parkes,* 201 Tenn. 566, 300 S.W.2d 922. The proposition was most explicitly stated in the *American Zinc Co.* case where Mr. Justice Chambliss, speaking for the Court, said:

"* * * It is clear that the act contemplates an agreement between the employer and the employee as the basis of that 'consent' which must be granted by the court before commutation may be ordered.

\* \* \* \* \* \*

"The act permits commutation only when the court consents. The use of the word 'consent' implies the precedent presentation of an agreed stipulation or order. It negatives the idea of arbitrary or initiatory action on the part of the court. And the language of the last sentence of the section, 'no settlement or compromise shall be made except, etc.,' supports this construction, clearly implying that the commutation thus provided for shall be made pursuant only to a 'settlement or compromise,' terms inconsistent with *ex parte* or forcible procedure.''

Absent a showing of fraud or coercion this Court must assume that the plaintiff consented to the lump sum arrangement in lieu of periodic payments. There is no evidence to indicate that he could not have received the payments periodically, had he so desired. Plaintiff has voluntarily accepted the court approved lump sum settlement and cannot now be heard to say that he had no choice. Consequently, we concur with the court's finding that the lump sum payment was in lieu of periodic payments, and therefore within the scope and application of Section 4, Part B of the Pension Plan.

Having determined the lump sum payment was in lieu of periodic payments, we now must ascertain whether or not the seventy-five (75%) per cent permanent partial disability to the plaintiff's body as a whole constitutes the 'loss of a bodily member,' within the meaning of the Pension Contract. If it does, the plaintiff is entitled to full pension benefits without a deduction for the workman's compensation settlement, notwithstanding, that the award could have been obtained on a periodic basis. As stated above, the contract provides that workman's compensation awards, which are paid periodically, or so payable if applied for, are deductible from the recipient's pension benefits, *"except statutory payments for the loss of a bodily member."*

Counsel for the plaintiff devotes the great majority of this argument to proving that, under Tennessee law, the body as a whole is a scheduled member. Counsel for the defendant does not controvert this assertion; but he contends that it is not germane and that the real problem concerns the contrast of language between the Pension Plan and the statute under which plaintiff received his settlement.

We agree with the defendant. The issue for this Court to decide is not whether or not the body as a whole is a scheduled member; rather, it is whether or not there has been a *loss* of a bodily member.

The answer to this question is contingent upon the meaning to be derived from the terms of the Pension Plan. In order to determine the meaning of this contract, we must ascertain the intention of the parties; and so long as it is not inconsonant with established legal principles, we must give effect to that intention. See,

e. g. *Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665; *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355; *Oman Const. Co. v. Tenn. Central Ry. Co.*, 212 Tenn. 556, 370 S.W.2d 563; *Commerce St. Co. v. Goodyear Tire and Rubber Co.*, 31 Tenn. App. 314, 215 S.W.2d 4.

The issue resolves itself to whether or not it was the intent of the parties, upon entering the contract, that the employer should be allowed to deduct from the pension, otherwise due an employee, any amount of compensation paid the employee for permanent partial disability to the body as a whole. We think it was.

There is a significant dissimilarity between the language of the Pension Plan and that of T.C.A. sec. 50-1007, the statute governing compensation for permanent partial disability to the body as a whole. Subsection (c) of Section 50-1007 provides:

"All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate *loss of use* of the body as a whole resulting from the injury." (Emphasis supplied.)

It should be specifically observed that this statute refers to "loss of use"; whereas the Pension Plan refers to "loss of" a bodily member. There is a clear distinction between these phrases.

█ In an ordinary sense, *"loss of* a bodily member" connotes something more than mere impairment of the use of that member. It generally implies total and permanent incapacitation of the member, by severance or amputation. In contrast, it is commonly understood that

*"loss of use* of a bodily member" refers to some impairment in the normal functioning of the member; and it produces no implications of disattachment.

We believe that, at the time of the execution of the contract, the parties contemplated this distinction and, therefore, did not intend to preclude as a deduction from an employee's pension benefits periodic workmen's compensation payments for permanent partial disability to the body as a whole. This seems to be the only reasonable conclusion this Court could arrive at. Were this Court to hold otherwise, it would result that no workman's compensation awards would be deductible. Such an interpretation would render the deduction provision a complete nullity, and thereby, apparently defeat the design and intentions of the parties.

This Court in *Plumlee v. Maryland Casualty Co.*, 184 Tenn. 497, 201 S.W.2d 664, had the opportunity of determining what constitutes the loss of bodily member, insofar as the workmen's compensation statutes are concerned. Since the case at bar concerns the interpretation of a contract and is, therefore, dependent upon the parties' intent, the *Plumlee* decision is not binding upon this Court. However, the reasoning in that case does lend support to our conclusions. In that decision, while holding that there could be no loss of a bodily member unless there was a severance, this Court stated:

"If the member * * * be physically and in fact lost, i. e. *cut off or amputated,* then both employer and employee are bound by the statutory amount * * *" (Emphasis added.)

In conclusion, we hold that under Section 4, Part B of the Pension Plan, the defendant is entitled to deduct the

$10,200.00 of workman's compensation from the amount of pension benefits otherwise due to plaintiff.

We believe that our decision is supported by justice and equity, as well as the intent of the parties upon execution of the agreement.

Affirmed.