Barber LOFTY, Plaintiff,

v.

Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 30916.

United States District Court,
E. D. Michigan, S. D.

March 20, 1970.

Morton E. Schneider, Kelman, Loria, Downing & Schneider, Detroit, Mich., for plaintiff.

Robert J. Grace, U. S. Atty., by, Franklin G. Koory, Asst. U. S. Atty., Detroit, Mich., for defendant.

OPINION

THORNTON, District Judge.

Plaintiff brings this suit to review a final decision of the Secretary of Health, Education and Welfare under the provisions of 42 U.S.C.A. § 405(g). Briefly stated, it is plaintiff's position that the decision is erroneous in four respects. *First*, plaintiff contends that his disability dates from a period prior to June 1965 (the effective date of certain reduction provisions of the Social Security Act, as amended). *Second*, plaintiff contends that the lump sum settlement entered into in lieu of periodic payments to which he became entitled under the provisions of the Michigan Workmen's Compensation Act was not such a "commutation of, or a substitute for, periodic payments" (42 U.S.C.A. § 424a (b)) as to be subject to the reduction provisions of the amended Act. *Third*, plaintiff contends that the reduction or crediting provisions of the Act for workmen's compensation benefits are unconstitutional. *Fourth*, plaintiff contends that if such reductions are to be made the formula applicable should be different from the one here employed.

The factual background of this case is succinctly set forth in the Hearing Examiner's Decision. We quote verbatim the paragraph from that decision setting forth such background:

"The material facts in the case are not in dispute. In essence, they show that on December 9, 1963 the claimant fell in his employer's parking lot and dislocated and fractured his right arm. He was off work for 4½ weeks, returning in January 1964. In the interim his arm had been set and he received physical therapy twice a week.

After returning to work he continued to receive medical care. The claimant had little or no use of his right arm, being able to lift it from the elbow only, and, therefore, was placed on small parts only, rather than his usual machine operations where he worked all kinds of machines and had to lift as much as 100 pounds or more. On the small parts operation, he worked with parts weighing at most one-half a pound and operating a drill press, burring and reaming parts weighing from one-half to five ounces. On December 2, 1965 the claimant was accidentally hit on the right arm by another employee and he was treated for this by a doctor. On January 19, 1966, the claimant developed pain in the left shoulder, which was diagnosed as traumatic bursitis. This was his last day of work. He was treated for this condition in January 1966 and throughout February 1966, but with no significant improvement. He was unable to move either shoulder and in the latter month, was given a total disability. He continued to be treated, but as late as June 1, 1966, there was complete loss of function in the right shoulder and severe limitation of motion in the left shoulder. Based upon these facts, the claimant alleged in his application for benefits, and the Administration found, that he was 'disabled' from January 19, 1966."

The application for disability was filed March 29, 1966, alleging inability to engage in "substantial gainful activity" from January 19, 1966. This was allowed. In computing the benefits to which plaintiff thereby became entitled, the reduction provisions of the 1965 Amendments to the Social Security Act were applied because of benefits plaintiff had received from workmen's compensation. Plaintiff then sought and received a hearing before the Hearing Examiner contesting the application of the 1965 Amendments to his Social Security benefits. At that hearing plaintiff amended his application to allege that the onset date of his disability was

December 1963, rather than January 19, 1966. This brings us to a consideration of plaintiff's *First* contention.

■ In order for plaintiff to successfully establish the onset of disability date as December 1963, it must be established that from that date on he was unable to engage in "substantial gainful activity." 42 U.S.C.A. § 416(i) (1) (A). The fine lines that have been drawn by those courts which have been confronted with the determination of ability to engage in "substantial gainful activity" in the plethora of reported disability cases are hardly relevant to the circumstances present here. Plaintiff here denies the existence of that which is. No amount of rationalization that we may employ can render negative that which is positive. Plaintiff testified that from January 1964 to January 1966 he had worked forty to fifty hours a week. The fact that he worked on small parts since he could not lift heavier ones does not affect the "substantiality" of his activity in light of a forty- to fifty-hour work week. His earnings record from 1962 through 1965 reflects not only gainful activity but upwardly gainful activity. For the four years 1962 through 1965 his earnings, respectively, were: $4,280.93, $5,965.77, $6,926.71 and $8,117.27. His contention that he was unable to engage in "substantial gainful activity" in 1964 and 1965 is so patently ridiculous as to be meritless on its face. "Thus, even though an enumeration of the medical findings might initially lead to the conclusion that impairments have been established of such proportions that engagement in work activity is highly unlikely, if in fact a claimant has engaged in employment which can reasonably be classified as 'substantial gainful activity,' he is thereby precluded by the definition of 'disability' from obtaining benefits under the Act." Marshall v. Gardner, 298 F.Supp. 542, 545 (S.D.W.Va. 1968), affirmed 408 F.2d 883 (C.A.4, 1969). Plaintiff is, therefore, not a pre-1965 amended Social Security Act claim-

ant. The decision of the Secretary in this respect is supported by substantial evidence.

■ Plaintiff's *Second* contention is that the settlement of his workmen's compensation rights was a "redemption settlement" not a commutation or a substitute for periodic payments within the meaning of 42 U.S.C.A. § 424a(b). A copy of the State of Michigan Workmen's Compensation settlement order of May 19, 1966 is included in the Certification of defendant, attached to the Answer herein—Exhibit No. 11, page 118 of the Certification. It is denominated Redemption Order, and it is to the effect that the employer's entire liability is redeemed by the agreement "by a single payment in lieu of weekly payments and all medical benefits." The net sum payable to the plaintiff was $10,722.00. The Michigan statute pursuant to which the lump sum award was made clearly contemplates that such a lump sum payment is a substitute for plaintiff's claim for future periodic payments. See Walters v. Flemming, 185 F.Supp. 288 (D.Mass. 1960); see also Wehmeier v. W. E. Wood Co., 377 Mich. 176, 139 N.W.2d 733 (1966). The defendant's determination in this respect is supported both by law and reason, and is not erroneous.

■ We now reach plaintiff's *Third* contention which he states, in his February 2, 1970 brief, as follows: "We maintain that Section 224[1] which imposes a formula for reducing social security disability benefits when the claimant is receiving workmen's compensation is demonstrably repugnant to the due process clause of the Fifth Amendment." The statute reads as follows:

Section 224 (42 U.S.C.A. § 424a).

"(a) If for any month prior to the month in which an individual attains the age of 62— ·

(1) such individual is entitled to benefits under section 423 of this title, and

---

1. 42 U.S.C.A. § 424a, as amended in 1965.

(2) such individual is entitled for such month, under a workmen's compensation law or plan of the United States or a State, to periodic benefits for a total or partial disability (whether or not permanent), and the Secretary has, in a prior month, received notice of such entitlement for such month,

the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—

(3) such total of benefits under sections 423 and 402 of this title for such month, and

(4) such periodic benefits payable (and actually paid) for such month to such individual under the workmen's compensation law or plan,

exceeds the higher of—* * *."

Both plaintiff and defendant cite Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) as supportive of their respective contentions. Plaintiff quotes from *Nestor* the test of permissible classification— "[W]e must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Nestor, supra,* at page 611, 80 S.Ct. at page 1373. As to the facts in *Nestor* and the holding therein, a summary was made by Circuit Judge Gerald McLaughlin in Price v. Flemming, 280 F.2d 956, 958 (C.A.3, 1960), which we here set forth. The *Nestor* decision—

"concerned the suspension of Nestor's Social Security benefits because of past membership in the Communist party. The district court held that the right of the wage-earner to the primary benefit was a property right and enforceable despite the fact that the 1954 Amendments to the Social Security Act expressly authorized suspension in the particular circumstances. The Secretary appealed that decision directly to the Supreme Court. In the latter's opinion, just rendered as above stated, the Court held:

'We think that the District Court erred in holding that § 202(n) deprived appellee of an "accrued property right." [Nestor v. Folsom] 169 F.Supp. at page 934. Appellee's right to Social Security benefits cannot properly be considered to have been of that order.'

And further:

'We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment.'

The Court also held that:

'The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause. * * * Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.'

It is the fact that Nestor, as stressed by both appellant and the amicus curiae, was not eligible for benefits under the Act until after the statute covering deportation because of past Communist membership became effective. Nestor, states appellant, therefore had no accrued property right. But the Supreme Court did not decide Nestor on that narrow ground. It expressly rejects the concept of accrued property rights as being a part of the Social Security System. It describes in terms certain the identical benefit with which we are dealing as 'a noncontractual benefit under a social welfare program.' "

It is plaintiff's contention that the benefit reduction provision of Section 224 is

so patently arbitrary and so utterly lacking in rational justification as to constitute discrimination that is unconstitutional. Defendant refers to the Senate Finance Committee report prior to the enactment of Section 224 stating that a purpose of the legislation is to prevent the payment of excessive combined benefits. Another objective of the legislation is to avoid duplication of public benefits. Plaintiff argues that there is, however, no provision for reduction of social security benefits for a claimant who receives private disability benefits or who receives a tort damage award. Plaintiff is saying that Section 224, in effect, has singled out claimants receiving workmen's compensation benefits as a target for reduced social security benefits, but not claimants who may be receiving benefits of entirely different types. Defendant argues that the social security program is to "provide a substitute, at least in part, of an individual's loss of earnings when he either retires or becomes disabled. Helvering v. Davis, 301 U.S. 619 [57 S.Ct. 904, 81 L.Ed. 1307] (1937); Nierotko v. Social Security Board, 327 U.S. 358 [66 S.Ct. 637, 90 L.Ed. 718] (1946). It is, therefore, reasonable to preclude a claimant from receiving amounts, as a result of retirement or disability, far in excess of his earnings received while working. Viewed in this light section 224 is analogous to section 203(b) of the Act providing for the impositon of deductions upon an individual's receipt of social security benefits due to excess earnings." (Defendant's reply brief, page 8). Defendant cites and quotes from Judge McLaughlin's opinion, quoted above herein in part, for the proposition that Congress has the power to impose deductions against retirement benefits in light of earnings in excess of amounts permitted by statute. It seems to us that the classification described in Section 224 includes all individuals receiving benefits under any federal or state workmen's compensation law, and to that extent it is not patently arbitrary in light of the purpose of social security benefits. The justification for such treatment is to prevent unequal benefits for those persons who would otherwise receive duplicate benefits. In this respect it seems to us to be rational. The provision was enacted to prevent the situation which had existed where a social security beneficiary received full social security benefits plus state or federal workmen's compensation benefits, compared to one who was not receiving state oŕ federal workmen's compensation benefits. The reduction provision attempts to equalize that which was unequal. Plaintiff contends that it does just the opposite.

The Court of Appeals for the Second Circuit, in an opinion written by Circuit Judge Robert P. Anderson, dealt with the theory advanced by a social security beneficiary that a certain discrimination in the Social Security Act was violative of due process and equal protection. In Gruenwald v. Gardner, 390 F.2d 591 (C.A.2, 1968) plaintiff Gruenwald took isue with the "different and discriminatory criteria" established by Congress for the "computation of benefits for men and women at age 62 as a result of the application of 42 U.S.C. § 415(b) (3)." The Court said that plaintiff disputes "the unequal treatment of two individuals solely because of sex," and said that plaintiff argued that a "classification must rest upon a difference which is real." Judge Anderson did not fail to point out that the difference *is* real. He also said, at page 592:

"It is only the 'invidious discrimination' or the classification which is 'patently arbitrary [and] utterly lacking in rational justification' which is barred by either the 'due process' or 'equal protection' clauses. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). A classification or regulation, on the other hand, 'which is reasonable in relation to its subject and is adopted in the interests of the community is due process.' * * * [Citations omitted.]

There is here a reasonable relationship between the objective sought by the classfication, which is to reduce the disparity between the economic and physical capabilities of a man and a woman—and the means used to achieve that objective in affording to women more favorable benefit computations. There is, moreover, nothing arbitrary or unreasonable about the application of the principle underlying the statutory differences in the computations for men and women."

We hold that the benefit reduction provision of Section 224 is not arbitrary classification, that it has rational justification and that it is not violative of due process.

With respect to plaintiff's *Fourth* contention we set it forth verbatim as expressed in his first brief. It is as follows:

"(4) Assuming only for the purposes of argument that the deductions in the Act are permissible and applicable to this case, claimant submits that the following principles should apply:

(a) the 80% crediting clause should apply to claimant's total earnings, not just to creditable earnings;

(b) that the net amount of the lump-sum settlement received by claimant must be divided over the length of the exposure period upon which the settlement was based and then credited against claimant's entitled social security benefits.

(c) That the Social Security Department must consider the fact that approximately 41.5 percent of every dollar spent on workmen's compensation constitutes payment for medical expenses and only pro-rate the remaining 58.5 percent of the redemption settlement against claimant's social security payments."

With respect to (a) above, the Hearing Examiner's Decision contains the answer which is dispositive of the point. In his CONCLUSIONS, paragraph (2), the Hearing Examiner sets forth Section 224(a), subsections (1) through (5). We have previously herein set forth subsections (1) through (4). Subsection (5) appears in the footnote below.[2]

The Hearing Examiner concludes as follows:

"Claimant's counsel contended that the 80 per cent computation of 'average current earnings' should be based on the total earnings rather than on earnings creditable for Social Security only, in spite of provision (A) of the last paragraph cited above, because provision (B) of said paragraph carries no such limitation. He argued that even though the claimant had no self-employment, it appeared to be the intent of Congress that the largest amount available for computation be used. Current Congressional action makes this contention untenable. The proposed amendments of the Social Security Act, passed in the House (H. R. 12080) and now awaiting Senate action, provides, among other changes, as follows:

"SEC. 157. (a) (1) The last sentence of section 224(a) of the Social Security Act is amended by inserting after "his wages and self-employment income" where it first appears in clause (B) the following: "(computed without regard to the limitations specified in sections 209 (a) and 211(b) (1))".

(b) (1) The amendments made by subsection (a) shall apply only with respect to monthly benefits under title II of the Social Security Act

---

2. "(5) 80 percentum of his 'average current earnings', or * * *
For purposes of clause (5), an individual's average current earnings means the larger of (A) the average monthly wage used for purposes of computing his bene-

fits under section 423 of this title, or (B) one-sixtieth of the total of his wages and self-employment income * * * for the five consecutive calendar years after 1950 for which such wages and self-employment income were highest. * * *"

for months after the month in which this Act is enacted."

Apparently, the contention of claimant's counsel that an individual's 'average current earnings' should not be limited to earnings covered by Social Security, in the light of the proposed Amendment, has merit. However, the very fact that this amendment is now under active consideration, *but with the proviso that it not apply until the month after the month in which the Amendment is passed,* clearly indicates that this was not its intention when it passed the 1965 Amendments. Ergo, the use by the Administration of earnings creditable for Social Security only, was proper in computing the 'average current earnings'."

We can say it no better.

 Again, with respect to (4) (b) of plaintiff's *Fourth* contention, the Hearing Examiner's determination is entirely supportable and is confirmed by us. He states that:

"In arriving at its determination that the claimant's benefits be reduced to $25.80 per month, the Administration used the following computation. The five highest consecutive calendar years of earnings, after 1950, were the years 1961 through 1965. In these years he earned, respectively, $1,790.34; $4,280.93; $4,800.00; $4,800.00; $4,800.00 (the last entries represent the maximum earnings creditable for Social Security). This averages out to $341.00 per month during this period. Eighty per cent of $341.00 equals $272.80. Since the claimant was receiving $247.00 a month ($57.00 a week x 4⅓) from Workmen's Compensation, the maximum he could receive from Social Security was $272.80 less $247.00, or $25.80 a month. The Hearing Examiner concurs with the computation."

The procedure employed was in accordance with Section 224(b) which reads:

"(b) If any periodic benefit under a workmen's compensation law or plan is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section." 42 U.S.C.A. § 424a(b).

 Lastly is plaintiff's contention that defendant should somehow allocate 41.5 per cent of the workmen's compensation settlement to medical expense and prorate the 58.5 per cent against the Social Security payment. There is just no basis, legal or practical, for such a procedure. It would be contrary to Section 224(b). In addition, there was no breakdown in the Redemption Order indicating that any particular percentage thereof was for medical expenses. The lump sum was a substitute for periodic payments and subject to the applicable statutory provisions.

For the reasons hereinabove set forth, defendant's motion for summary judgment will be granted. An appropriate order may be presented.