Donald SOPER

v.

ST. REGIS PAPER COMPANY.

Supreme Judicial Court of Maine.

Feb. 13, 1980.

Archer & Downing, David R. Downing (orally), Brewer, for plaintiff.

Perkins, Thompson, Hinckley & Keddy, D. Brock Hornby (orally), Richard G. Moon, Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

Donald Soper appeals from a judgment of the Superior Court, Hancock County, holding the defendant St. Regis Paper Company not obliged immediately to make full payments from a disability pension plan adopted as part of a collective bargaining agreement with Soper's union. St. Regis acknowledges that Soper is entitled to benefits from the plan, but claims the right, under the terms of the plan, to set off a sum of $10,000 it had paid Soper as a lump-sum settlement of his workers' compensation claim. Soper argues, first, that such a set-off is not authorized by the terms of the collective bargaining agreement; second, that such a set-off, if provided for, is contrary to public policy and the Workers' Compensation Act, chapter 1 of title 39 of the Maine Revised Statutes; third, that by entering the lump-sum compromise settlement, the defendant implicitly agreed not to set off the lump sum against his pension benefits. We deny the appeal.

### Facts

The appeal was brought on an agreed statement of facts, which can be summarized as follows: Soper was employed by St. Regis Paper Company for more than thirty years, until July 25, 1971. Soper was a member of the International Brotherhood of Electrical Workers, Local No. 1777, which had negotiated a collective bargaining agreement with St. Regis, in effect from 1969 to 1972. That agreement provided for a pension plan for employees, which included a plan for disability payments. The terms of the pension plan, copies of which were available to all employees, included the following provision relating to the disability pension:

*Section 8.02*: Excepting payments made under the Federal Social Security Act and any governmental payments for service-connected disability, the amount of any other pension or disability payments, made to and constituting income to such a former Participant, for which payments the Company has contributed or shall contribute, shall be deducted from the Disability Pension payable under this plan. . . .

Soper became ill on July 25, 1971, and ceased working. He filed a petition for workmen's compensation in February, 1972, which was contested by St. Regis. The parties eventually negotiated a lump-sum settlement of the claim for $10,000 which was approved by the Industrial Accident Commission and paid by St. Regis.

During the negotiation of this settlement, no specific reference was made to the disability provisions of the pension plan. According to the agreed statement of facts, the negotiating attorneys had only "a vague awareness that Soper might have other rights." Soper did not expect that his disability retirement benefits would be affected by the lump-sum settlement, but no one representing St. Regis made any statements to prompt Soper's expectation. Soper simply assumed that he would receive both sets of benefits.

St. Regis has refused to make any pension payments until the sum of payments which would otherwise have been due equals $10,000. That will occur in February, 1980; thereafter St. Regis will pay Soper his full pension.

Soper began this action in Superior Court in April, 1974. In July, 1974, summary judgment was granted to the defendant, and Soper appealed to this Court. His appeal was sustained on the ground that a material issue of fact existed as to the understandings of the parties in entering

the lump-sum agreement. *Soper v. St. Regis Paper Co.*, Me., 341 A.2d 8, 10 (1975). On remand, the Superior Court ruled for St. Regis.

### Interpretation of the "Disability Payments" Set-off Provision

Soper's first argument concerns the meaning and intent of section 8.02 of the pension plan. He argues that the term "disability payments," as used in the pension plan, was not intended to include workers' compensation benefits. He also argues that even if weekly compensation payments were included, a lump-sum settlement is neither a "disability payment" nor "income" within the meaning of the plan, and that the set-off of a lump-sum settlement was not contemplated when the plan was drafted.

The interpretation of contract language is within the province of the court, *Moulton Cavity & Mold, Inc. v. Lyn-Flex Industries, Inc.*, Me., 396 A.2d 1024 (1979), and unambiguous language in the contract must be given its plain meaning. *T–M Oil Co., Inc. v. Pasquale*, Me., 388 A.2d 82 (1978). We find that the term "disability payments", as used in section 8.02 of the St. Regis pension plan, is unambiguous: there is no doubt that workers' compensation is a form of "disability payment". Moreover, a lump-sum settlement of a workers' compensation claim is also a form of "disability payment" to a disabled worker. The difficult question is whether the lump-sum payment in this case was a payment "constituting income" within the meaning of section 8.02 of the pension plan.

The first of Soper's arguments is that a lump-sum payment for an illness is not income because it is equivalent to a "lump sum payment for loss of a bodily member", a phrase used in an informational brochure sent by St. Regis to its employees describing the pension plan but not used in the contract. A somewhat similar argument was rejected in *Fultz v. Union Carbide*

*Corp.*, 219 Tenn. 345, 409 S.W.2d 541 (1966), on the ground that there was no evidence that the contract language "loss of bodily member" was intended to include an illness of the entire body. That reasoning has even more force here, where the wording was not even used in the contract itself. Whether "constituting income" was meant to exclude a payment for loss of a bodily member need not be decided, for Soper did not receive such a payment.

The meaning of "income" is not clear on the face of the contract. In the context of this pension plan, the term does not mean income as defined by the tax laws.[1] The phrase "disability payments constituting income" refers to payments that provide the disabled employee with a substitute source of income, as distinguished from payments that compensate for loss by reimbursing the employee for medical and other expenses. Section 52 of the Workers' Compensation Act provides for medical expenses, and sections 54 and 55 provide for compensation calculated from the employee's average weekly wages. Only compensation paid under sections 54 and 55 can be considered "payments constituting income".

This interpretation of section 8.02 of the pension agreement is supported by an examination of an analogous offset provision in the Federal Social Security Act, 42 U.S. C.A. § 424a (Supp.1979). That section provides, among other things, that social security disability payments shall be reduced by the amount of workers' compensation so that the combined total of payments for any one month does not exceed 80 percent of the employee's average pre-disability earnings. The regulations of the Social Security Administration provide that this offset shall not apply to

> [a]mounts paid or incurred, or to be incurred, by the individual for medical, legal, or related expenses in connection with his workmen's compensation claim, or the injury or occupational disease on which his workmen's compensation award

---

1. In general, section 104(a)(1) of the Internal Revenue Code excludes amounts received under workers' compensation acts from the definition of gross income. The Maine definition of taxable income tracks the federal law. 36 M.R. S.A. § 5121 (1978).

or settlement agreement is based . . . Such medical, legal, or related expenses may be evidenced by the workmen's compensation award, compromise agreement, or court order in the workmen's compensation proceeding, or by such other evidence as the administration may require. Such other evidence may consist of:

(1) A detailed statement by the individual's attorney, physician, or the employer's insurance carrier; or

(2) Bills, receipts, or canceled checks; or

(3) Other clear and convincing evidence indicating the amount of such expenses; or

(4) Any combination of the foregoing evidence from which the amount of such expenses may be determinable.

Any expenses not established by evidence required by the administration will not be excluded. Social Security Administration Regulations, 20 C.F.R. § 404.408(d) (1979).

See Smith v. Weinberger, 381 F.Supp. 1307, 1310 (E.D.Mich.1974), aff'd, 513 F.2d 632 (6th Cir. 1975); 4 A. Larson, The Law of Workmen's Compensation § 97.31 at 18–13 and § 97.33 at 18–19 n. 31 (1979). The use of the words "constituting income" in the St. Regis pension plan indicates an intent to adopt a similar policy of not off-setting medical, legal or other expenses.

The problem presented in the present case is how this offset in a private plan should apply to a single-sum payment of the sort received by Soper. The offset provision in the Social Security Act specifically excludes a benefit payable as a lump sum, "except to the extent that it is a commutation of, or a substitute for, periodic payments." 42 U.S.C.A. § 424a(b) (1974). The purpose of this exclusion is revealed in Senate Report No. 404 on the Social Security Amendments of 1965, as follows:

Since in some workmen's compensation cases, workers incur medical, legal, or related expenses in connection with their workmen's compensation claims, or in connection with the injuries they have suffered, and since the workmen's compensation awards are generally understood to include compensation for these expenses (except to the extent that special provision is made in the award to cover them or they are provided without cost to the worker), for purposes of this section the Secretary would not, in computing the amount of the periodic benefit payable to an individual under a workmen's compensation program, include any part of the workmen's compensation lump sum or benefit which he finds is equal to the amount of such expenses paid or incurred by the worker. Sen.Rep. No. 404, 89th Cong., 1st Sess., reprinted in [1965] U.S.Code Cong. & Admin.News 1943, 2200–01.

See Ladner v. Secretary of Health, Education and Welfare, 304 F.Supp. 474, 477 (S.D. Miss.1969).

St. Regis asserts that Soper's entire sum was a commutation of "income" payments, pointing out that Soper's settlement provided for separate payment of $1,000 in attorney's fees. It argues that, aside from expenses specifically separated out, a lump-sum award is a capitalization of income by the terms of 39 M.R.S.A. § 71 (1978).

Section 71 authorizes the Workers' Compensation Commission to approve petitions for lump-sum awards:

In any case where compensation is being paid or is claimed on account of an injury or death, either the employer, or the employee or his dependents, may petition the commission for an order commuting all payments on account of such injury or death that may become due in the future, to a lump sum. Such petition may be granted where it is shown to the satisfaction of the commission that the payment of a lump sum in lieu of future weekly payments, or as an agreed compromise settlement of a disputed claim, will be for the best interests of the person or persons receiving or claiming such compensation . . . . (Emphasis added).

At the time of Soper's petition, this paragraph of section 71 ended with the following sentence, which has since been repealed (P.L.1977, ch. 437, § 3):

Where such commutation is ordered, the commission shall fix the lump sum to be paid at an amount which will equal the total sum of the probable future payments capitalized at their present value upon the basis of interest calculated at 5% per year with annual rests.

This last sentence required calculation of the lump sum be based on "probable future payments". However, the record in this case shows that no such calculation was made and that Soper's probable payments were never established. Instead, the sum of $10,000 was "purely arbitrary", as admitted by the attorney who negotiated the sum for St. Regis. Both sides agree that the payment to Soper was a compromise of a disputed claim, as stated in Soper's petition to the Commission for approval of the lump-sum settlement. Soper's petition stated also that the settlement was to include all past and future medical expenses arising from his illness. There is no record of any attempt to determine either the amount of those expenses or the commuted value of compensation payments based on Soper's weekly wage at the time of his injury. The $10,000 sum was fixed only as a compromise of a disputed claim.

This Court has observed that an agreed compromise settlement between the parties respecting the plaintiff's claim which the employer disputes is not necessarily a lump-sum agreement in lieu of future weekly payments under a commission adjudication of employer liability. *Steeves v. Irwin*, Me., 233 A.2d 126, 133 (1967). Thus we cannot agree with St. Regis that a compromise settlement is necessarily a "payment constituting income". It may be, rather, a payment covering both wage replacement and medical expenses, which, under Maine law, would ordinarily give St. Regis a complete

discharge from all medical liability, past and future. *Steeves v. Irwin, supra* at 133; *Melcher's Case*, 125 Me. 426, 134 A. 542 (1926).

■ Soper's petition to the Commission for lump-sum settlement did not specify his medical expenses. This does not mean, however, that no expenses were covered. Because St. Regis had agreed to the payment, there was no reason for Soper to include evidence showing his medical expenses and wages with his petition for approval of the settlement. It was therefore possible for the Commission to approve the settlement without any inquiry into Soper's real needs. Although the burden of proof of entitlement to compensation is on the employee in a workers' compensation proceeding, *White v. Monmouth Canning Co.*, Me., 228 A.2d 795 (1967), it is unnecessary for the employee to introduce specific evidence of expenses into the settlement proceeding when the employer has already agreed to a compromise sum. St. Regis could not, therefore, set off the entire sum merely because the petition itself did not specify medical expenses.

■ However, Soper has presented nothing in the present action to show that his lump-sum settlement covered any medical or other expenses at all. In the absence of some stipulation in the agreed statement of facts or of some other evidence in the record, this Court has no basis for concluding that the lump sum represented anything but wage replacement. *See Smith v. Weinberger*, 381 F.Supp. 1307 (E.D.Mich.1974), aff'd, 513 F.2d 632 (6th Cir. 1975). As the record in this case stands, we can conclude only that St. Regis was entitled to set off the entire lump sum.[2]

---

**2.** The policy of including all medical expenses in lump-sum compromise settlements is by no means universally approved. Professor Larson notes that some states, such as New York and New Jersey, do not allow any compromises based on disputed compensability (as distinct from disputed degree of disability or dependency), 3 Larson, *supra*, § 82.43 at 15–563, whereas in some others, lump-sum settlements do not ordinarily apply to medical expenses. *Id.*,

§ 82.50 at 15–563, especially n. 50. Larson argues that

. . . it is difficult to imagine why it should ever be in the best interests of a claimant to bargain away his rights to future medical treatment for a lump sum. After all, how can unknown future medical costs be subjected to commutation on an actuarial basis? It is significant that the Council of State Governments' draft compensation law

In *Smith v. Weinberger, supra,* some actual medical expenses had been specified in the workers' compensation lump-sum settlement and had been excluded from the set-off. The claimant wanted to exclude additional medical expenses. The court held that the appellant would have been entitled to exclude such expenses as had been proved in accord with Social Security Administration Regulations § 404.408(d), set forth above. It denied the petition because the record contained no proof of claimed additional expenses.

Other Federal Social Security offset cases include *Lofty v. Cohen,* 325 F.Supp. 285 (E.D.Mich.1970), *aff'd sub nom. Lofty v. Richardson,* 440 F.2d 1144 (6th Cir. 1971), *cert. denied* (Douglas, J., dissenting), 404 U.S. 985, 92 S.Ct. 443, 30 L.Ed.2d 369 (1971); *Ladner v. Secretary of Health, Education & Welfare,* 304 F.Supp. 474 (S.D. Miss.1969); and *Walters v. Flemming,* 185 F.Supp. 288 (D.C.Mass.1960). In *Walters* a lump sum under the Massachusetts statute was ruled to be a "redemption of the liability of the insurer for all weekly payments"; medical expenses were not considered. In *Ladner,* a specific liability for weekly payments of $70 had been established, and the court found that the lump sum was "without any doubt" a substitute for those payments. 304 F.Supp. at 477. In *Lofty,* the main issue was the constitutionality of the offset, and the nature of the lump sum was only briefly touched on. The court found that under Michigan law the lump sum was a commutation of weekly payments.

The general import of those cases is that a lump sum will be treated as income when required by the applicable state law or when the record shows that it was intended as such. We think the principle uniformly applied in those decisions, in determining the exclusion of workers' compensation benefits from social security payments, should be followed in this case. Under Maine law,

as discussed above, the amount of the compromise settlement will not be treated as necessarily only income for purposes of set-off, but it will be so treated in the absence of proof that other expenses were covered.

### Legality of the Set-Off

■ Soper argues that the set-off in the St. Regis pension plan is illegal because it frustrates the purpose of the Workers' Compensation Act. He contends that the effect of the set-off is to nullify the order of the Commission because the employee gets no more than he would have if he had not gone to the Commission.

The Superior Court, in rejecting this argument, stated:

The purpose of such a setoff provision is to eliminate the possibility of an injured employee enjoying a double recovery from benefits financed by his employer. Such a purpose is clearly legitimate unless it contravenes the provisions . . . or purpose of the Workers' Compensation Act, Title 39 M.R.S.A. The Act does not prohibit double recovery, but neither does it expressly or by implication prohibit the avoidance of double recovery.

That ruling was correct. Soper attempts to deduce a policy favorable to overlapping benefits from our decisions in *Page v. General Electric Co.,* Me., 391 A.2d 303 (1978), and *Gullifer v. Granite Paving Co.,* Me., 383 A.2d 47 (1978), but those cases held only that, as the statute now reads, workers' compensation benefits cannot be reduced by a set-off of unemployment payments. This does not imply a prohibition against reduction of private benefits by an agreed-on set-off of workers' compensation payments.

Set-offs of workmen's compensation are common in disability pension plans. Such provisions have not been held illegal; in some cases, courts have construed ambiguous clauses to avoid double recovery. *See* 4 Larson, *supra,* § 97.51 at 18–55. The courts

does not permit even its strictly controlled application of lump-summing to be applied to medical benefits. 3 Larson, *supra,* § 82.50 at 15–564. *See also id.,* § 82.71.
Professor Larson ends his discussion with a call for "conscientious administration", and

"unrelenting insistence" that lump-summing be used only when it is demonstrably in the best interest of the employee. *Id.,* § 82.71 at 15–574.

have not manifested disapproval of the objective of avoiding overlapping payments. Provisions for deduction of workers' compensation in pension agreements were enforced in *Fultz v. Union Carbide Corp., supra,* and *Williams v. Insurance Co. of North America,* 150 Mont. 292, 434 P.2d 395 (1967). The arguments raised by Soper were specifically rejected in *Parsons v. Granite City Steel Co.,* 41 Ill.App.2d 396, 190 N.E.2d 644 (1963). The Supreme Court of the United States has upheld the workers' compensation set-off provision of the Social Security Act, 42 U.S.C.A. § 424a, against constitutional attack on equal-protection grounds. *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (three justices dissenting). *See also Lofty v. Richardson, supra.* Another source of support for set-offs such as the one in this case can be found in the fact that they are allowed in pension plans approved by the Internal Revenue Service. Rev.Rul. 68–243, 1968–1 C.B. 157.

Soper argues that the set-off violates 39 M.R.S.A. § 62, which provides that in determining the sum of an employee's benefits, payments "derived from any source other than the employer" shall not be considered. However, section 62 deals only with reduction of workers' compensation and has no application to the present case. Even though the pension fund was partly derived from employee contributions, the set-off did not affect any reduction in the compensation required by statute and therefore did not violate section 62.

### Effect of the Lump-Sum Agreement

██ Soper's last contention is that St. Regis, by entering into lump-sum settlement negotiations without mentioning the set-off against his pension, in effect waived or renegotiated the set-off. Because the set-off was never mentioned, either in the negotiations or in the petition for approval of the settlement by the Industrial Accident Commission, Soper argues that the settlement agreement precludes any subsequent set-off.

St. Regis had not misinformed Soper or misled him into believing that the set-off would not be exercised. As the court below

ruled, any mistake on his part was unilateral. Therefore, he cannot claim that he was induced to enter the settlement by a representation that should now be binding on St. Regis. Soper argues on appeal that he relied on the informational brochure distributed by St. Regis, but it is not possible to infer such reliance in the agreed statement of facts, which stated that Soper was only "vaguely aware" of other rights. In short, there is no basis for ruling that St. Regis lost or waived any rights in the negotiations that led to the settlement of the disputed claim.

The entry is:

Appeal denied.

Judgment affirmed.

GLASSMAN, J., did not sit.

POMEROY, J., sat at oral argument and conference but retired prior to the preparation of the opinion.

ARCHIBALD, J., sat at oral argument and conference but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.