## Carollo v. Wheeling-Pittsburgh Steel Corp.

William R. Caroselli, for plaintiff.

Patrick W. Ritchey, for defendant Wheeling-Pittsburgh Steel Corp.

FINKELHOR, J., December 16, 1985—This matter* comes before the court on petitioners' and respondents' cross-motions for summary judgment in this declaratory judgment action. Unfortunately, after oral argument, the file of this case was mislaid and formal action was not taken by the court.

The named petitioners seek a determination, on behalf of themselves and others similarly situated, that state law prohibits pension agreements which provide for a reduction in benefits equal to the amount of compensation payments provided under the Pennsylvania Worker's Compensation Act, 77 P.S. §1 et seq., and the Occupational Disease Act, 77 P.S. §1201 et seq.

There are two issues. The first is whether summary judgment is permissible under the Uniform Declaratory Judgment Act of 1923, 12 P.S. §831 et seq., and second, whether §204 of the Pennsylvania Worker's Compensation Act, 77 P.S. §71 (Purdon Supp. 1984), and the companion section 204 of the Occupational Disease Act, 77 P.S. §1304 (Purdon 1952), cancel the offset provision contained within each of defendant's pension agreements. The feder-

---

* The case came before the court on a motion for summary judgment. The file was apparently mislaid. Counsel did not contact the court and no action has been taken.

al courts have determined that pension offset clauses for worker's compensation do not violate ERISA. Doumont et al. v. Shenango, no. 80-1857 (3d Cir., June 15, 1981).

## FACTS

The relevant facts are undisputed. The named petitioners, Carollo, Warbutton and Koltash, each terminated employment with respondent Wheeling-Pittsburgh as a result of an occupational disease or disability and were awarded benefits pursuant to the Pennsylvania Occupational Disease Act. The awards provided for payment of $60 per week up to $12,750 and $100 per month thereafter for life.

Petitioners, all members of Local 1229 of the United Steelworkers of America (USW), were also beneficiaries of a pension agreement entered into between Wheeling-Pittsburgh and the USW as part of its collective-bargaining contract. This agreement contains a clause providing for a reduction in pension benefits in an amount equal to that received by the employee under the Occupational Disease Act or other similar statutory award. The identical provision is contained in the collective-bargaining agreements of the other corporate defendants.

The contested deductions apply in two different circumstances. Employees receiving either a 30-year or an age-65 pension receive a special lump-sum payment during the first three months of retirement which is exempt from the offset provision. Regular monthly benefits, commencing in the fourth month of retirement, are subject to the deduction. Employees receiving a disability pension are exempt from the offset provision until reaching age 65. At that time, their disability pension is con-

verted to a regular age-65 pension which is subject to the deduction. However, such persons are not eligible to receive the lump-sum payment which is available to other retirees upon attaining age 65.

## DISCUSSION

### 1. Availability of Summary Judgment

Summary judgment was not available in proceedings brought under the prior act, 12 P.S. §831 et seq. Laspino v. Rizzo, 40 Pa. Commw. 625, 398 A.2d 1069 (1979); Pa. Assoc. of State Mental Hosp. Physicians v. State Employees' Retirement Board, 31 Pa. Commw. 151, 375 A.2d 863 (1977). However, the new rules are expressly made applicable "to all actions pending on the effective date" of February 1, 1980. Pa.R.C.P. 1603. The instant action falls within this category of actions and, accordingly, summary judgment is permissible.

Under the present Declaratory Judgment Act, 42 Pa.C.S. §7531 et seq., summary judgment is available as a procedural device in declaratory judgment actions. Pennsylvania Public Utility Commission Bar Association v. Thornburgh, 62 Pa. Commw. 88, 434 A.2d 1327 (1981); 11 Std. Pa. Prac.2d §66:1 (1982).

A related question is the binding effect of summary judgment upon the members of the purported class. Since the instant proceedings were filed before the effective date of the Rules of Civil Procedure respecting class actions, Pa.R.C.P. 1701 et seq., and are not applicable to pending actions, they are governed by the prior Rule 2230. Clayton v. Cawley, 71 Berks Co. 238, 10 D.&C.3d 275 (1979).

### 2. Validity of Offset Provision

Sections 204 of the Worker's Compensation Act, 77 P.S. §71 and the Occupational Disease Act, 77

P.S. §1304, contain substantially identical language which, quoted from the latter, provide as follows:

"No agreement, composition, or release of damages made before the date of any disability or death resulting from occupational disease, except the agreement defined in article three of this act, shall be valid or shall bar a claim for damages for such disability or death; and any such agreement other than that defined in article three herein, is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three thereof; and any release executed in consideration of such benefits shall be void: Provided, however, that if the employee receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of the Occupational Disease Act."

The purpose of these sections is to protect employees from bargaining away their right to receive compensation for occupational injuries, Wahs v. Wolf, 157 Pa. Super. 181, 42 A.2d 166 (1945), and to guarantee the availability of these statutory benefits irrespective of whether or not the employee is entitled to receive other benefits by reason of his employment. Cohen v. Doubleday & Company, 191 Pa. Super. 106, 155 A.2d 378 (1959).

The instant case presents the opposite question: whether the employee's receipt of compensation may be used to offset other benefits to which the employee is entitled by reason of his employment. The case is apparently one of first impression in Pennsylvania.

Defendants, in their brief, cite a number of cases from other jurisdictions which raise a similar ques-

tion and these cases generally hold that similar off-set provisions did not run afoul of statutes prohibiting the reduction of compensation awards. See, e.g., Renshaw v. U.S. Pipe and Foundry Co., 30 N.J. 458, 153 A.2d 673 (1959); Soper v. St. Regis Paper Co., 411 A.2d 1004 (S.Ct.Me. 1980).

In Renshaw, the court rejected a similar argument based upon the New Jersey Worker's Compensation statute:

"Had, then, defendant sought to reduce the compensation payments by the amount of the pension, which was unrelated to the disability resulting from the accident, it may be, . . . that such would violate the public policy underlying our compensation act . . .

"But in our case it is plain beyond argument that no decrease in compensation benefits was intended or accomplished by the pension plan, nor did it amount to an unlawful means whereby defendant was enabled to recoup such payments . . . What the plan actually amounted to, and no more, was a commitment by the company to see that each retired employee received a fixed amount of money monthly, to compensate partly for wages lost through inability to continue employment by reason of age, and that if such was not forthcoming in whole or in part from the specified sources, i.e., . . . workmen's compensation . . . or public disability pension, it would pay the computed amount or any deficiency." 153 A.2d at 678.

The Soper court reasoned that set-offs from pension benefits are common and not in any way violative of public policy:

"Set-offs of workmen's compensation are common in disability pension plans. Such provisions have not been held illegal; in some cases, courts have construed ambiguous clauses to avoid double

recovery. The courts have not manifested disapproval of the objective of avoiding overlapping payments . . . Another source of support for set-offs such as the one in this case can be found in the fact that they are allowed in pension plans approved by the Internal Revenue Service." 411 A.2d at 1009-10.

A similar set-off provision was described in Turner v. Jones & Laughlin Steel Corp., 479 Pa. 618, 389 A.2d 42 (1978), but the Pennsylvania Supreme Court did not discuss the issues raised in this case.

Additional support for respondents' position is provided under ERISA, 29 U.S.S. § 1001 et seq. (effective January 1, 1975), which preempts state laws regarding pension agreements. ERISA regards such pension offsets as lawful, invalidating state laws to the contrary. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S. Ct. 1895, 68 L.Ed.2d 402 (1981).

While the court may not agree with the economic result of using pension set-offs, this is the decision of the company and union, subject to the provisions of ERISA. Under existing case law, it is clear that the pension plan provisions calling for reductions in retirement benefits do not abridge or alter the right of the employee to receive compensation under the aforementioned acts. Rather, such reductions apply only to the pension benefits received pursuant to a pension plan which is itself a product of the collective-bargaining process. The reduction in pension benefits serves the reasonable purpose of preserving the financial integrity of the plan and of providing each retiree with a similar degree of financial protection. Nothing in the public policy of the Commonwealth would render such a plan invalid.

With regard to the allegations that respondents conspired to deprive petitioners of their pension

benefits through the inclusion of these provisions in their collective-bargaining agreements, we find this position to be without merit. The inclusion of such provisions within the labor contracts were indisputably the product of the mutual give-and-take of the collective-bargaining process. It follows, therefore, that respondents cannot "conspire" to deprive petitioners of that which they themselves, through their collective-bargaining representative, the USW, agreed to accept.

For the reasons set forth herein, we conclude that the motion of respondents for summary judgment should be granted and the cross-motion for summary judgment filed on behalf of petitioners denied.

An appropriate order is attached hereto.

## ORDER OF COURT

And now, this December 16, 1985, based upon the prior discussion, it is hereby ordered, adjudged, and decreed that the motion for summary judgment filed by petitioners Carollo, Warbutton and Koltash is denied, and the petition for summary judgment filed by the named respondents is granted and judgment entered in favor of respondents.